STATE v. DONALD G. COOK.

(Filed 12 October, 1955.)

**1. Burglary and Unlawful Breaking § 4—**

The essential elements of the offense described in the first part of G.S. 14-54, are: (1) an unlawful breaking or entering (2) of the dwelling house of another (3) with the intent to commit a felony or other infamous crime therein.

**2. Burglary and Unlawful Breaking § 11—**

Evidence tending to show that defendant unlawfully broke or entered by trespass the sleeping quarters of one or more nurses, that a nurse awoke, and saw him, entirely nude, standing in the room, inquired what he wanted, that defendant informed her he was looking for a named girl, and, upon being told that she was gone for the week end, and that he had better leave, defendant tip-toed out of the room, without taking anything with him, *is held* insufficient to sustain conviction under G.S. 14-54 for absence of any evidence of defendant's intent to commit a felony. The offense was committed prior to the effective date of the amendment of Ch. 1015, Session Laws of 1955.

**3. Same—**

Where defendant unlawfully enters a dwelling house in the nighttime and flees upon being discovered, without making any explanation of his presence or of his intent, the jury may infer an intent to steal although no theft is actually committed, but this inference does not pertain when defendant explains his presence or intent, and leaves upon demand without any attempt at larceny.

WINBORNE and HIGGINS, JJ., took no part in the consideration or decision of this case.

APPEAL by defendant from *Froneberger, J.,* July Term, 1955, of GASTON.

Criminal prosecution tried upon a bill of indictment charging that the defendant, Donald G. Cook, in the nighttime, on the 8th day of May, 1955, did feloniously and burglariously break and enter the dwelling house of one North Carolina Orthopedic Hospital Nurses' Home, and then and there occupied by one Shirley Wiggins, with intent to steal and carry away the goods and chattels of Shirley Wiggins in the said dwelling house then and there being, etc. The second count in the bill charged larceny of certain goods belonging to Shirley Wiggins of the value of more than $100.00.

When the case was called, the solicitor announced that the State would not seek a conviction for burglary but for breaking and entering, with intent to commit a felony.

The defendant entered a plea of not guilty.

Miss Shirley Wiggins testified for the State: "I work at the North Carolina Orthopedic Hospital. I was working at the hospital on the 8th day of May. I know Donald G. Cook when I see him. . . . I saw him on the night of the 8th day of May, 1955. About 3:30 a.m., when I woke up and looked at the foot of my bed, I saw a nude boy, and I lay there for a few minutes trying to determine whether I was awake or asleep, and I finally asked him what he was doing, and he said, 'Where is Joyce?' I said, 'She has gone home for the week-end.' He said, 'Is she not coming back?' I said, 'No, . . . she will be back Monday.' I asked him who it was, and he said 'Alvin.' Again I asked what he wanted, and he said, 'Joyce.' Then I asked him to leave, and I said, 'You had better get out of here.' He pointed his finger at me and said, 'When she comes back, tell her that Alvin came,' and with that he tip-toed out of the room and went down the hall and went down the stairs. He did not have on any clothes at all."

On cross-examination this witness testified, "we found a window screen raised from the outside . . . and we found a big handprint on the bed in a vacant room, right under the window." That she saw Donald G. Cook the following day and he admitted that he was the one

in her room and stated that he would like to see a psychiatrist. This witness further testified that Joyce is not her roommate but that she stayed close to her room. That the defendant did not appear to be drinking; that she did not smell any alcohol; that no property was taken or missing from her room.

Officer E. H. Groves, a witness for the State, testified that on the morning of the 8th day of May, 1955, he received a report that someone had entered the Nurses' Home at the Orthopedic Hospital; that he went out to the hospital and talked to Miss Wiggins and several nurses. That Miss Wiggins told him about what had happened, and they went down to the lower floor and found where a window had been opened. It was in a vacant room that had a bed in it, and you could see the prints of someone's hands where they appeared to have crawled across the bed. That as a result of certain information, he picked up Donald G. Cook who finally admitted that he was the one who had gone in the hospital; that he had parked his car near the hospital; that he had kind of blacked out; that he removed his clothing and had gone in the hospital. He said he didn't know why he removed his clothing and that he didn't know how he got into the hospital. The defendant did say that he had had several quarts of beer that night.

The defendant offered no evidence.

Verdict: Guilty.

Judgment: That the defendant be confined in the Gaston County jail for a period of eighteen months, to be assigned to work under the supervision of the State Highway and Public Works Commission.

From the judgment entered, the defendant appeals, assigning error.

*Attorney-General Rodman and Assistant Attorney-General Love for the State.*

*Childers & Johnston for defendant, appellant.*

DENNY, J. The offense described in the first part of G.S. 14-54, contains the following essential elements: (1) an unlawful breaking or entering (2) of the dwelling house of another (3) with the intent to commit a felony or other infamous crime therein.

We concur in the State's contention to the effect that its evidence tends to show both an unlawful breaking or entry by trespass of the sleeping quarters of one or more nurses in the North Carolina Orthopedic Hospital. Even so, the only question for determination is whether or not the evidence adduced in the trial below was sufficient to carry the case to the jury on the question of an intent to commit the crime charged in the bill of indictment.

In order to convict a defendant under G.S. 14-54, of a felony or other infamous crime, it is necessary to show that the breaking or entering the dwelling or other building described in the statute, was done "with the intent to commit a felony or other infamous crime therein." *S. v. Spear*, 164 N.C. 452, 79 S.E. 869; *S. v. Crisp*, 188 N.C. 799, 125 S.E. 543; *S. v. Friddle*, 223 N.C. 258, 25 S.E. 2d 751. However, Chapter 1015 of the 1955 Session Laws of North Carolina, which became effective on the 17th day of May, 1955, amended G.S. 14-54 by adding at the end thereof the following: "Where such breaking or entering shall be wrongfully done without intent to commit a felony or other infamous crime, he shall be guilty of a misdemeanor." But, the provisions contained in this amendment are not applicable to this case since they were enacted after the conduct complained of occurred.

It is true that some of our cases are to the effect that where a defendant enters a dwelling in the nighttime, he having no right to be there, and flees when discovered, without making any explanation of his presence or of his intent, the jury may infer an intent to steal although no theft was actually committed. *S. v. McBryde*, 97 N.C. 393, 1 S.E. 925; *S. v. Spear, supra; S. v. Hargett*, 196 N.C. 692, 146 S.E. 801; *S. v. Oakley*, 210 N.C. 206, 186 S.E. 244.

In the instant case, however, the defendant did not flee when he was discovered, but upon inquiry as to what he wanted, he inquired about Joyce, a girl who worked at the hospital and who had gone home for the week-end. Her room was located near that of Miss Wiggins. Nothing was taken, and when the defendant was requested to leave, "he tip-toed out of the room and went down the hall and went down the stairs."

We know of no decision of this Court upholding a conviction under G.S. 14-54 for larceny, where all the State's evidence tended to negative the intent to commit the crime charged, as it does here.

As reprehensible as the conduct of the defendant was, we do not think the evidence of the State is sufficient to support a conviction of the crime charged. Hence, the defendant's motion for judgment as of nonsuit will be sustained.

Reversed.

WINBORNE and HIGGINS, JJ., took no part in the consideration or decision of this case.