## STATE OF NORTH CAROLINA v. NATHANIEL JACOBS

### No. 6910SC542

(Filed 17 December 1969)

1. **Criminal Law § 42— bloodstained pants — sufficiency of identification**

    In this prosecution for breaking and entering, bloodstained pants allegedly worn by defendant on the occasion of the break-in were sufficiently identified for admission in evidence where defendant's grandmother testified she put the pants in water to soak the morning after the crime, that she "reckoned" they were the pants defendant was wearing when he came home on the night in question, and that she gave the pants to a police officer, and the police officer testified that the pants were in the same condition as when he received them from defendant's grandmother and that the pants had been in his locker since they were given to him.

2. **Criminal Law § 55— blood grouping test results**

    In this prosecution for breaking and entering, the trial court properly admitted expert testimony of the results of blood grouping tests performed on blood samples taken from the scene of the crime and from the defendant, notwithstanding the witness testified that he could not determine whether the two samples came from the same person.

3. **Burglary and Unlawful Breakings § 5— breaking and entering — sufficiency of circumstantial evidence**

    In this prosecution for breaking and entering, the State's evidence is *held* sufficient for submission to the jury where it tends to show that the proprietor of the store which was broken and entered shot one of the intruders, that defendant and his uncle were seen walking around the store prior to the break-in, that defendant was bleeding when apprehended the day after the crime and had two wounds in his buttocks, and that blood samples taken from the crime scene and from defendant were both type A.

APPEAL by defendant from *Carr, J.,* 4 August 1969 Session of WAKE Superior Court.

Defendant was indicted for breaking and entering with the felonious intent of larceny. The jury found him guilty as charged and he was sentenced to serve not less than four years nor more than six years.

The State's evidence tended to show that about 1:25 a.m. on the morning of 19 April 1969 the W. L. Hamilton Grocery Store was entered through a window located in the rear of the store. W. L. Hamilton, the proprietor of the store, fired two shots from a pistol towards a noise in the store, the first shot hitting the unseen person. Blood was found in the area where the wounded person has escaped. The defendant had been seen in the vicinity of the store several hours earlier in the company of his uncle, walking up and down the

street and in back of the store. The two were later seen near the store by the same witness who testified that the uncle was holding defendant as though he had been hurt. The evidence further tended to show that a fire poker had been discovered outside the store near the window which looked like one that had been missing from the house of defendant's grandmother, where he had been staying. There is testimony that the grandmother was awakened by the defendant standing over her bed on the morning in question and that when she awoke, defendant went into another room and lay down on a lounge chair and that she saw blood on the defendant's pants at that time. Blood was found on the lounge chair, on a spread on which defendant slept and on a pair of pants belonging to defendant which were found near the lounge chair. There is further evidence which tended to show that defendant was bleeding when apprehended on the afternoon after the break-in and that he had two wounds in his buttocks where something had gone through both of his buttocks. The pants had two holes in the rear, above the hip pockets. There was expert testimony that the blood of the defendant and the blood scraped from the scene of the crime were of type A.

Defendant offered no evidence.

*Attorney General Robert Morgan and Assistant Attorney General Millard R. Rich, Jr., for the State.*

*L. Bruce Gunter for defendant appellant.*

MORRIS, J.

[1]    Defendant's first exception was to the introduction of the pair of pants into evidence. He contends that the pants which were allegedly worn on the occasion of the break-in were not sufficiently identified and should not have been admitted into evidence. We think there is sufficient testimony in the record to warrant admission of the pants into evidence. The defendant's grandmother testified in response to the solicitor's questions as follows:

"Q.    Listen to my question. Did you put the pants that he was wearing that night when he came home in soak the next morning?

A.    I put them there in there. I reckon it was the ones he had on."

"Q.    Did you put the pair of pants he was wearing that night in soak the next morning?

A.    I told you that I dropped them in the bath tub and run water on them.

Q. Was that the pair of pants that Nathaniel Jacobs was wearing when he came home that night?

A. No sir. I didn't ask him. I just dropped them in the tub and run water over them. That is all I done to them.

Q. To what? Did that to what pair of pants?

A. Them there.

Q. These that I have right here?

A. Yes, sir.

Q. Well, was that the pair that Nathaniel Jacobs was wearing when he came home that night?

A. I don't know. I reckon so."

"Q. And you say that they were his pants that he was wearing that night, didn't you?

A. I reckon they were. I won't over there when it happened. I don't know nothing about what happened."

She also testified that she told a police officer that "they were Nathaniel Jacobs' pants, . . ."

Police Officer J. H. Bowers testified that defendant's "grandmother gave me the pants Saturday evening about 3:00 o'clock, and I picked up a bloody spread at the same time. The pants were in substantially the same condition when I got them as they are now. They have been in my locker since I have had them."

This testimony provides some evidence that the pants are what they are purported to be and objections to its sufficiency goes to the weight to be given the testimony rather than to the admissibility of the pants into evidence. 22A C.J.S., Criminal Law, § 709, pp. 949-951. The weight to be given the testimony and the credibility of the witnesses are for the jury. 2 Strong, N.C. Index 2d, Criminal Law, § 103.

[2] Defendant's second exception is to the court's refusal to strike the testimony of the SBI chemical specialist relating to blood samples taken from the scene of the crime and from the defendant. The witness testified that both blood samples demonstrated the A blood grouping factor but that he "could not make a test to determine whether or not the blood in the scrapings was some of the same blood or from the same person as the flood from" the defendant and that he did not know whether the two samples came from the same person. There is respectable authority that such testimony re-

lating to blood test results may be admitted into evidence. 46 A.L.R. 2d 1000; McCormick on Evidence, § 177 (1954); 29 Am. Jur. 2d, Evidence, § 106.

In *State v. Peele*, 274 N.C. 106, 161 S.E. 2d 568 (1968), cert. denied, 393 U.S. 1042 (1969), the defendant's bloodstained clothing was held to be properly admitted into evidence after chemical analysis had disclosed that the stains on the clothing were made by human blood of the same type as the victim's blood. In the *Peele* case the question was whether defendant's bloodstained clothing was admissible into evidence after chemical analysis was performed, whereas in the case at bar the question is whether the testimony itself is admissible. Also, in the *Peele* case the comparison was made between blood found on defendant's clothing and the blood of the victim, whereas in the case at bar the comparison was made between the blood taken from the scene of the crime and the blood of the defendant. We hold that the testimony relating to the blood grouping tests was admissible.

[3]    Defendant's third exception is to the court's refusal to dismiss the case at the close of the evidence. In *State v. Colson*, 1 N.C. App. 339, 161 S.E. 2d 637 (1968), cert. denied, 393 U.S. 1087 (1969), is was said:

"[H]owever, to withstand a motion of nonsuit in a criminal case it is not required that the evidence exclude every reasonable hypothesis other than that of defendant's guilt. It is required that there be substantial evidence of all material elements of the offense, and it is immaterial whether the substantial evidence is circumstantial or direct or both. As was said by Higgins, J., in *State v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431: 'To hold that the court must grant a motion to dismiss unless, in the opinion of the court, the evidence excludes every reasonable hypothesis of innocence would in effect constitute the presiding judge the trier of the facts. Substantial evidence of guilt is required before the court can send the case to the jury. Proof of guilt beyond a reasonable doubt is required before the jury can convict. What is substantial evidence is a question of law for the court. What that evidence proves or fails to prove is a question of fact for the jury.' "

In this case there was enough evidence of the material elements of the crime to submit the case to the jury.

Affirmed.

MALLARD, C.J., and HEDRICK, J., concur.