STATE OF NORTH CAROLINA v. WILLIAM DALLAS FLETCHER
— AND —
STATE OF NORTH CAROLINA v. WESLEY ST. ARNOLD

No. 70

(Filed 10 June 1971)

1. Criminal Law § 74— what constitutes a confession

Defendant's statement admitting his participation in an armed robbery amounted to a confession and was governed by the constitutional and evidentiary rules relating to confessions.

2. Criminal Law § 75— admissibility of confession

Voluntariness remains the test of admissibility of a confession.

3. Criminal Law § 75— admissibility of confession — defendant in jail

The fact that a defendant is in jail and under arrest when he makes a confession does not, standing alone, render it involuntary.

4. Criminal Law § 75— custodial interrogation — Miranda warnings

The "Miranda warnings" are only required when the defendant is being subjected to custodial interrogation.

5. Criminal Law § 75— admissibility of defendant's statement — absence of counsel

Defendant's in-custody statement to the victim of armed robbery, "We have nothing against you; we were broke and needed money," was not the result of a custodial interrogation and was properly admitted in evidence despite the absence of Miranda warnings to defendant.

6. Criminal Law § 169— harmless error in admission of incriminating statement

Any error in the admission of an incriminating statement is harmless when there is no reasonable possibility that its admission would have contributed to the conviction.

7. Criminal Law §§ 95, 169— joint trial of defendants — admission of extra-judicial statements implicating nontestifying codefendant

In a joint trial of three defendants for armed robbery, it was error to admit in evidence an extra-judicial statement made by one defendant to the prosecuting witness, "We have nothing against you; we were broke and needed money"; nevertheless, such error was harm-

State v. Fletcher and State v. St. Arnold

less beyond a reasonable doubt as to a nontestifying codefendant where there was overwhelming evidence of the codefendant's participation in the robbery.

**8. Constitutional Law § 31— identity of informer**

Defendant's motion for disclosure of the identity of an informer *held* properly denied by the trial judge under the facts of this case.

**9. Criminal Law § 7— defense of entrapment — insufficiency of evidence**

Evidence that police officers received information from an informer that a certain individual would be robbed, that the officers stationed themselves in a boxcar across from the individual's place of business, and that the defendants were apprehended when they attempted to take money by gunpoint from the individual's place of business, *held* insufficient to support the defense of entrapment.

**10. Criminal Law § 34— evidence of defendant's prior crimes — admissibility**

A nontestifying defendant was not prejudiced by a codefendant's testimony on cross-examination that he had met the defendant in the "Virginia State Pen," since the admission was admissible to show that the two defendants had known each other for many years and could have planned the crime in question.

**11. Criminal Law § 64 —testimony relating to defendant's being on drugs**

Refusal of trial court to allow defendant to cross-examine a patrolman on whether defendant was under the influence of drugs at the time of the crime, *held* not prejudicial where (1) the officer's answer would have been negative and (2) the defendant was later permitted to examine the officer on this question.

**12. Criminal Law § 169— admission of prejudicial evidence elicited by defendant**

A defendant may not complain of prejudicial evidence which he elicited on cross-examination.

**13. Criminal Law § 64— opinion testimony — person under the influence of drugs**

A lay witness may state his opinion as to whether a person is under the influence of drugs where the witness has observed the person and such testimony is relevant to the issue being tried.

**14. Criminal Law § 162— exclusion of evidence — failure of record to show answer of witness**

An exception to the exclusion of evidence cannot be sustained when the record fails to show what the witness would have testified had he been permitted to answer.

**15. Criminal Law § 64— defendant under influence of drugs — intent to to commit crime — exclusion of evidence relating to drugged condition**

Defendant was not prejudiced when his codefendant was prevented from testifying as to whether defendant's intent to commit

armed robbery was impaired or nullified by drugs, where other evidence elicited on the trial strongly showed that defendant was in possession of his senses at the time of the robbery and knew the difference between right and wrong.

**16. Criminal Law § 161— exception to the judgment**

   An exception to the judgment presents the face of the record for review.

**17. Criminal Law § 127— arrest of judgment**

   A motion in arrest of judgment is one generally made after verdict to prevent entry of judgment based upon insufficiency of the indictment or some other defect appearing on the face of the record.

APPEAL by defendants Fletcher and St. Arnold from *Beal, S. J.,* 4 May 1970 Criminal Session of DAVIDSON.

Defendants William Dallas Fletcher (Fletcher) and Wesley St. Arnold (St. Arnold) and James Preston Swaney (Swaney) were charged in separate bills of indictment with armed robbery of Dalton Myers (Myers). The cases were consolidated for trial, and the jury returned a verdict of guilty as to each defendant. Each defendant gave notice of appeal from judgment imposed, but only defendant Swaney timely perfected his appeal. This Court found no error in the trial of Swaney by opinion reported at 277 N.C. 602, 178 S.E. 2d 399. On 11 February 1971 this Court entered an order allowing defendants Fletcher and St. Arnold to perfect their appeals and ordered that their respective cases be consolidated for the purpose of appeal and hearing.

The State offered the testimony of Myers and several police officers which, in substance, tended to show that SBI Agent Poole was informed that Myers would be robbed at his home on 27 February 1970 or at his place of business on the following day. On 28 February 1970 SBI Agent Poole and Captain Stamey of the Thomasville Police Department, went to a diner near Myers Oil Company at about 3:00 o'clock p.m. Other police officers were stationed in a boxcar across from Myers' business. At about 4:00 o'clock a Mercury Comet driven by St. Arnold parked near Myers Oil Company. Swaney was in the middle front seat and Fletcher was in the right front seat. St. Arnold and Fletcher got out of the automobile, and at that time St. Arnold put on a jacket and put a pistol in his right-hand pocket. Swaney remained in the automobile. Fletcher and St. Arnold went in the front door of Myers Oil Company

with drawn pistols, and by threat of the arms took Myers' wallet containing approximately $43 and $105 from the money box of the business. Myers was tied up and placed in a small room in the back, and Fletcher and St. Arnold left the building. When they emerged from the building they were ordered to halt by the police officers, whereupon Fletcher fired the first shot and attempted to run. The officers returned fire and Fletcher was wounded in the left shoulder. St. Arnold dropped a paper bag containing money when he saw the police officers. St. Arnold, Fletcher, and Swaney were immediately arrested at the scene. A pistol with four spent cartridges was found near the spot where Fletcher was arrested, and a pistol was found on the person of St. Arnold.

Defendant Swaney was found sitting under the steering wheel of the Comet automobile, with the motor running. At the trial Swaney stated that he knew nothing of the plan to rob the Oil Company.

Defendants Fletcher and St. Arnold did not testify.

*Attorney General Morgan and Staff Attorney Eatman for the State.*

*Jerry B. Grimes for defendant Fletcher.*

*William H. Steed for defendant St. Arnold.*

BRANCH, Justice.

APPEAL OF WESLEY ST. ARNOLD

Defendant St. Arnold contends that the trial court erred in admitting, over his objection, the custodial statement made by him to Myers while in a police officer's presence.

Major Kirkman of the Thomasville Police force, accompanied Myers to St. Arnold's cell about 7:00 p.m. on 28 February 1970. At that time the record shows that the following conversation occurred between Myers and St. Arnold:

"Q. Describe in your own words the conversation that took place between you and St. Arnold.

MR. GRIMES AND MR. STEED: Objection.

OBJECTION OVERRULED AS TO ST. ARNOLD.

State v. Fletcher and State v. St. Arnold

OBJECTION SUSTAINED AS TO DEFENDANTS FLETCHER AND SWAMEY *(sic)*.

DEFENDANTS EXCEPT.     DEFENDANTS' EXCEPTION NO. 5.

"A. I asked St. Arnold what did they have against me to rob me; he answered, 'We have nothing against you. We were broke and needed some money.'

MR. BEEKER: Motion to strike the answer as to the defendant Swamey *(sic)*.

MR. STEED: Motion to strike.

COURT: I sustained the answer at the outset as to Swamey *(sic)* and Fletcher."

DEFENDANTS EXCEPT.     DEFENDANTS' EXCEPTION NO. 6."

[1] The statement made by defendant St. Arnold amounted to a confession since it, in effect, admitted that he took part in the armed robbery. *State v. Williford*, 275 N.C. 575, 169 S.E. 2d 851; *State v. Hamer*, 240 N.C. 85, 81 S.E. 2d 193. Thus, the constitutional and evidentiary rules of law relative to confessions are applicable.

[2, 3] Voluntariness remains the test of admissibility of a confession. *State v. McRae*, 276 N.C. 308, 172 S.E. 2d 37; *State v. McCloud*, 276 N.C. 518, 173 S.E. 2d 753. The fact that a defendant is in jail and under arrest when he makes a confession does not, standing alone, render it involuntary. *State v. Crawford*, 260 N.C. 548, 133 S.E. 2d 232.

In *State v. Wright*, 274 N.C. 84, 161 S.E. 2d 581, it is stated:

"*Miranda v. Arizona*, 384 U.S. 436, 16 L. ed. 2d 694, 86 S.Ct. 1602, lays down the governing principle that as a constitutional prerequisite to the admissibility of statements obtained from an accused during custodial police interrogation, the suspect must be advised in unequivocal terms (1) that he has a right to remain silent; (2) that anything he says can and will be used against him in court; (3) that he has a right to consult with a lawyer and to have a lawyer with him during interrogation; and (4) that if he is an indigent a lawyer will be appointed to represent

him. After having been so advised, a defendant may waive these constitutional rights provided the waiver is made voluntarily, knowingly, and intelligently."

**[4]** The so-called "Miranda warnings" are only required where defendant is being subjected to custodial interrogation. *State v. Meadows,* 272 N.C. 327, 158 S.E. 2d 638; *State v. Morris,* 275 N.C. 50, 165 S.E. 2d 245. Unquestionably, St. Arnold was in custody in a police dominated atmosphere. *Miranda v. Arizona,* 384 U.S. 436, 16 L. ed. 2d 694, 86 S.Ct. 1602. However, whether the question addressed to St. Arnold by Myers constituted interrogation within the meaning of *Miranda* poses a more serious question.

In 29 Am. Jur. 2d, Evidence, § 555, p. 610, it is stated:

"The court in the Miranda Case noted . . . that the fundamental import of the privilege against self-incrimination while an individual is in custody is not whether he is allowed to talk to the police without benefit of warnings and counsel, but whether he can be *interrogated*." (Emphasis added.)

In *People v. Morse,* 76 Cal. Rptr. 391, 452 P. 2d 607, the defendant, a prisoner, was accused of murdering one of the prison inmates. The prison guard found the victim outside defendant's cell, and the guard was permitted to testify that while he was trying to revive the victim he asked defendant, "Joe, did you do this?" The defendant nodded his head in the affirmative, and said "Yeah." The Court, holding that the guard's questions were "devoid of inquisitorial techniques" and that no process of interrogation had been undertaken, stated:

" . . . [A]ny determination as to whether or not a process of interrogations was undertaken must rest upon an objective test according to which we 'analyze the total situation which envelops the questioning by considering such factors as the length of the interrogation, the place and time of the interrogation, the nature of the questions, the conduct of the police and all other relevant circumstances.' *(People v. Stewart,* (1965), 62 Cal. 2d 571, 579, 43 Cal. Rptr. 201, 206, 400 P. 2d 97, 102, affd. sub nom. *California v. Stewart* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed. 2d 694.)

State v. Fletcher and State v. St. Arnold

In *Howell v. State,* 5 Md. App. 337, 247 A. 2d 291, the defendant had been questioned initially and had terminated the questioning by stating he did not wish to be questioned further. An hour later, while the appellant was being "processed" at the police station, he was told that his accomplice had made incriminating statements about him. He thereupon made a statement which he later attacked in court. It was held that the statement did not result from "interrogation" but was more in the nature of volunteered information.

In *State v. Perry,* 276 N.C. 339, 172 S.E. 2d 541, the defendant was confined to jail awaiting trial for murder. Upon his trial the court allowed his cellmate to testify that the defendant told him that he (the defendant) shot the deceased. Holding that the court need not conduct a *voir dire* hearing to determine the voluntariness of the admission, this Court, speaking through Higgins, J., stated:

> "The defendant misinterprets the necessity for the *voir dire* examination to determine the voluntariness of his admissions to his jailmate Pierce. As a general rule, voluntary admissions of guilt are admissible in evidence in a trial. To render them inadmissible, incriminating statements must be made under some sort of pressure. Here we quote from the Supreme Court of the United States in *Hoffa v. United States,* 385 U.S. 293, 17 L. Ed. 2d 374: 'Neither this Court nor any member of it has ever expressed the view that the Fourth Amendment protects a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it. . . . 'The risk of being overheard by an eavesdropper or betrayed by an informer or deceived as to the identity of one with whom one deals is probably inherent in the conditions of human society. It is the kind of risk we necessarily assume whenever we speak. (A)ll have agreed that a necessary element of compulsory self-incrimination is some kind of compulsion.' . . . "

Accord: *State v. Spence,* 271 N.C. 23, 155 S.E. 2d 802.

[5, 6]  We do not think that the statement made to Myers by St. Arnold was a result of custodial interrogation as condemned by the line of authority represented by *Escobedo v. Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, 84 S.Ct. 1758; *Miranda v.*

*Arizona, supra; and Davis v. North Carolina,* 384 U.S. 737, 16 L. Ed. 2d 895, 86 S.Ct. 1761. Even had there been error in the admission of this statement, it would not have been prejudicial since there is no reasonable possibility that it would have contributed to St. Arnold's conviction. We believe that the admission of the statement, if erroneous, would have been harmless error beyond a reasonable doubt. *Harrington v. California,* 395 U.S. 250, 23 L. Ed. 2d 284, 89 S.Ct. 1726; *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S.Ct. 824.

### THE APPEAL OF WILLIAM DALLAS FLETCHER

[7] Defendant Fletcher assigns as error the admission of the above-quoted extra-judicial statement made by his codefendant St. Arnold to Myers.

The rules of law pertinent to decision of this question were enunciated and applied as they relate to the defendant in *State v. Swaney, supra.* In that case, this Court, relying particularly on *State v. Fox* 274 N.C. 277, 163 S.E. 2d 492, and *Bruton v. United States,* 391 U.S. 123, 20 L. Ed. 2d 476, 88 S.Ct. 1620, held the admission of St. Arnold's statement to be erroneous; however, the error was declared "harmless beyond a reasonable doubt." See also *State v. Brinson,* 277 N.C. 286, 177 S.E. 2d 398, and *Chapman v. California, supra.* The principles upon which Swaney was decided are even more clearly applicable to Fletcher. Swaney was found sitting in an automobile near the scene of the crime, with the motor running. Fletcher was identified by the victim as one of the men who robbed him. Several police officers saw him emerge from the building where the alleged robbery occurred. He immediately fired at the officers and attempted to flee, but was wounded and arrested at the very scene of the robbery. This overwhelming evidence of his participation in the robbery demands an application of the rule declaring the admission of St. Arnold's statement to be "harmless error beyond a reasonable doubt."

This assignment of error is overruled.

[8] Defendant Fletcher contends that the trial judge erred by denying his motion to disclose the identity of an alleged informer.

Fletcher's motion was made in apt time. We must therefore consider whether the circumstances of this case require

State v. Fletcher and State v. St. Arnold

disclosure of the informer's identity. *State v. Swaney, supra,* differs factually from instant case, in that Swaney contended that he knew nothing about the robbery. However, both Swaney and Fletcher rely on the defense of entrapment to support this assignment of error.

We find in 76 A.L.R. 2d, at p. 282, the following:

"The privilege of nondisclosure must give way and disclosure of the identity of an informer is required where disclosure is essential or relevant (material) and helpful to the defense of an accused, or lessens the risk of false testimony, or is necessary to secure useful testimony, or is essential to a fair determination of the cause. Contrariwise, the privilege of nondisclosure will be upheld where disclosure of the identity of an informer does not aid defendant in regard to his defense, and is not essential nor relevant (material) for that purpose or for the fair disposition of the case. Important factors in this connection are that the accused admits or does not deny guilt, or makes no defense on the merits or that there is independent evidence of accused's guilt."

The North Carolina cases on entrapment are accurately summarized in 2 Strong's N. C. Index 2d, Criminal Law, § 7, as follows:

"Mere initiation, instigation, invitation, or exposure to temptation by enforcement officers is not sufficient to establish the defense of entrapment, it being necessary that the defendants would not have committed the offense except for misrepresentation, trickery, persuasion, or fraud. . . . [I]f the officer or agent does nothing more than afford to the person charged an opportunity to commit the offense such is not entrapment. Therefore, mere acts affording defendant an opportunity to commit the offense and steps taken to apprehend him in its commission, or even the fact that officers pretended to act in conjunction with the defendant in committing an offense, does not constitute entrapment when the idea of committing the offense originates with the defendant or defendants."

We think that the language used by the U. S. Supreme Court in *Lopez v. United States,* 373 U.S. 427, 10 L. Ed. 2d

462, 83 S.Ct. 1381, is appropriate to decision of the question here presented. There the Court stated:

> "The conduct with which the defense of entrapment is concerned is the *manufacturing* of crime by law enforcement officials and their agents. Such conduct, of course, is far different from the permissible stratagems involved in the detection and prevention of crime. Thus before the issue of entrapment can fairly be said to have been presented in a criminal prosecution there must have been at least some showing of the kind of conduct by government agents which may well have induced the accused to commit the crime charged."

[9] Here there is not only strong independent evidence of Fletcher's guilt, but there is complete failure to show any conduct by police officers which may have induced defendant Fletcher to commit the crime of armed robbery. The evidence shows only that officers received information that a crime might be committed and thereupon took appropriate action. Neither do we find prejudicial error in the fact that the trial court did not rule on this motion until the State had completed a portion of its evidence. We fail to see that the ruling denying this motion prejudiced Fletcher since he was not forced to develop inconsistent defenses and had full opportunity to offer any available defense.

Under the circumstances of this case we hold that the trial judge properly denied the motion to disclose the identity of the informer.

Fletcher next assigns as error the action of the trial judge in allowing the solicitor to cross-examine Swaney concerning his prior criminal record.

[10] The general rule is that when a defendant in a criminal action testifies in his own behalf, the State's solicitor may, for the purpose of impeachment and attacking his credibility as a witness, cross-examine him as to previous criminal convictions. *State v. Goodson,* 273 N.C. 128, 159 S.E. 2d 310; Stansbury, North Carolina Evidence, 2d, § 112. Fletcher, however, points to the further cross-examination when the solicitor asked Swaney where he met Fletcher, and Swaney, over defendant Fletcher's objection, replied, "Virginia State Pen."

State v. Fletcher and State v. St. Arnold

The rule controlling the question here presented is well stated in Stansbury, North Carolina Evidence, 2d Ed., § 91, p. 210, as follows:

" . . . Evidence of other offenses is inadmissible if its only relevancy is to show the character of the accused or his disposition to commit an offense of the nature of the one charged; but if it tends to prove any other relevant fact it will not be excluded merely because it also shows him to have been guilty of an independent crime."

Here Swaney testified that as a result of automobile trouble he was hitchhiking and was picked up by Fletcher and St. Arnold. His testimony implied that there was an accidental meeting, and that no plan or design to commit armed robbery could have existed between the parties. This cross-examination was properly allowed in order to show that Fletcher and Swaney had known each other for many years and that a plan or design could have existed between them to commit the armed robbery. See Stansbury, North Carolina Evidence, § 92, p. 216.

[11] Defendant Fletcher further contends that the trial judge erred in sustaining the State's objection to lay testimony relative to defendant's being under the influence of Wyamine, an amphetamine drug.

In this connection defendant's attorney asked Patrolman Scruggs if he had an opinion as to "whether or not he (defendant) was under the influence of some drug to a sufficient amount to have deprived him of his reason or control." The court sustained the State's objection, but permitted his answer to be placed in the record. The answer to the question as shown in the record is "I don't know." Later, Patrolman Scruggs was recalled for further cross-examination by defendant's attorney, and the following transpired:

"Q. Based on your observation of the defendant at the time that you observed his conduct on the premises of Myers Oil Co. have you an opinion satisfactory to yourself whether the defendant was under the influence of some drug or other substance to such extent that his normal functions of body and mind were so interfered with or impaired?

A. Yes, I have an opinion.

Q. You have an opinion?

A. Yes.

Q. What is that opinion?

A. That he was not under the influence of some drug or whatever.

. . . .

"Q. Let me ask you this question—have you an opinion satisfactory to yourself based on your observation of the defendant at this time as to whether his mental faculties were sufficiently impaired as to deprive him of the ability to know the consequences of his acts?

OBJECTION OVERRULED.

Q. Have you an opinion?

A. Yes.

Q. What is that?

A. I don't know whether he is, or not.

Q. You don't know whether he was or not?

A. No."

[12] It is evident that defendant was not prejudiced by the court's first ruling in light of the patrolman's negative answer. Upon recall, the court allowed defendant's counsel fully to explore Patrolman Scruggs' opinion as to defendant's condition relative to drugs. Even if the evidence then elicited were prejudicial, defendant may not complain of evidence elicited by him on cross-examination. *State v. Burton*, 256 N.C. 464, 124 S.E. 2d 108.

On cross-examination defendant's counsel elicited from Swaney that he had seen defendant Fletcher inject himself with Wyamine six to ten times during the week immediately preceding 28 February, 1970, and that after such injections he would appear to get a "feeling of well-being and be relaxed . . . and mostly just talked and get very excited." During the cross-examination of Swaney by defendant's counsel the record shows the following:

State v. Fletcher and State v. St. Arnold

Q. I'll ask you have you an opinion based upon your observation of the defendant and conversation with the defendant Fletcher on the afternoon of the 28th of Febuary, 1970, immediately prior to the time he left the automobile which has been indicated on the diagram parked on West Main St. and left going in the direction of Myers Oil Co., if at that time he was under the influence of Wyamine?

A. Yes, he was.

Q. To such an extent that his normal functions of body and mind were so interfered with, that is—that he was in such condition that he could not understand or could not form the intent of the act that he was about to commit?

OBJECTION SUSTAINED.

DEFENDANT FLETCHER EXCEPTS.

DEFENDANT FLETCHER'S EXCEPTION NO. 62.

Q. I asked—have you an opinion.

OBJECTION

COURT: He asked if he had an opinion.

MR. CLARK: He is not a medical expert.

COURT: I understand.

MR. CLARK: If he has an opinion it's irrelevant.

COURT: Let him ask.

Q. Have you an opinion. Yes or no?

A. Yes, in my opinion he was.

MR. CLARK: Motion to strike the answer as not responsive.

COURT: Motion to strike the answer of the defendant beyond the word "yes" is allowed. Members of the jury, you will not consider anything else the witness said beyond the word "yes."

Thereafter, Swaney was allowed to testify that he himself had used Wyamine from 1961 to 1966, and had been using the

same drug for some time immediately preceding the armed robbery.

[13] This Court has long recognized that a lay witness may give his opinion as to whether a person is under the influence of intoxicants when the witness has personally observed him. *State v. Warren,* 236 N.C. 358, 72 S.E. 2d 763; *State v. Flinchem,* 247 N.C. 118, 100 S.E. 2d 206. Likewise, a lay witness may state his opinion as to whether a person is under the influence of drugs when he has observed the person and such testimony is relevant to the issue being tried. *State v. Cook,* 273 N.C. 377, 160 S.E. 2d 49.

Swaney appeared to be well qualified by special experience to give opinion testimony as to whether Fletcher was under the influence of the drug Wyamine, and he had ample opportunity to observe Fletcher on the occasion of the alleged robbery. See 47 N.C.L. Rev. 193. However, it must be noted that the question to which objection was made was patently a leading question.

In Stansbury, North Carolina Evidence, § 31, p. 58, it is stated:

" . . . A leading question is a question that suggests the answer desired, and usually a question that may be answered by "yes" or "no" is regarded as leading.

"The rule is based, however, on the real or assumed friendliness of the witness to the party on whose behalf he is being examined, and not on the technical distinction between direct examination and cross-examination. Hence leading questions may be asked on direct examination when the witness is unwilling or evasive or is hostile to the party calling him, and the cross-examiner may be prohibited from asking such questions when the witness shows a strong bias in favor of the cross-examining party. And even in the case of a friendly witness the rule has its reasonable limitations."

Further, the answer as to whether defendant could form an intent to commit the crime was unresponsive and was properly stricken on the solicitor's motion. *State v. Norris,* 242 N.C. 47, 86 S.E. 2d 916.

[14] The record does not contain an answer to many of the questions asked Swaney concerning Fletcher's condition with respect to drugs. An exception to the exclusion of evidence cannot be sustained when the record fails to show what the witness would have testified had he been permitted to answer. *State v. Poolos*, 241 N.C. 382, 85 S.E. 2d 342; *State v. Kirby*, 276 N.C. 123, 171 S.E. 2d 416.

[15] Aside from the technical rules of evidence, the opinion evidence which counsel sought to elicit from Swaney concerning Fletcher's ability to form an intent to commit the crime of armed robbery runs counter to the *actions* of Fletcher as described by Swaney and all of the other eyewitnesses. We cannot perceive how a person who could not form an intent to commit a crime could know right from wrong. Fletcher's actions in firing at the police officers and in attempting to flee demonstrates his ability to distinguish right and wrong. The possession of his senses was further demonstrated by his actions during the robbery. He told St. Arnold where the money box could be found, and he asked Myers if he had other money. He assisted in tying up the victim and, after placing him in a small room, helped secure the door with wire. These actions would overwhelmingly rebut any testimony which counsel sought to elicit from Swaney concerning Fletcher's ability to form an intent to commit the act of armed robbery. Thus, if the judge did technically err in his ruling, which we do not concede, the facts of this case would relegate such error to the class of harmless error.

[16, 17] Defendant assigns as error the signing of the judgment and denial of his motion in arrest of judgment. An exception to the judgment presents the face of the record for review, and a motion in arrest of judgment is one generally made after verdict to prevent entry of judgment based upon insufficiency of the indictment or some other fatal defect appearing on the face of the record. We have carefully searched the record in instant case, and no fatal defect appears on its face. *State v. Kirby, supra.*

Fletcher and St. Arnold were simply caught "red-handed" in the very act of committing the crime of armed robbery. This record recites the uncontradicted testimony of seven eyewitnesses which unerringly points the finger of guilt to both

Fletcher and St. Arnold. In light of the overwhelming evidence presented by the State, any errors which might have occurred in this trial are clearly harmless beyond a reasonable doubt.

We find no prejudicial error as to either William Dallas Fletcher or Wesley St. Arnold.

No error.