State v. Perry

---

STATE OF NORTH CAROLINA v. NATHANIEL LEE PERRY, JR.

No. 7114SC691

(Filed 29 December 1971)

1. Constitutional Law § 31— identity of informant

In this prosecution for felonious breaking and entering, the trial court did not err in refusing to compel the State to disclose the identity of a confidential informant who gave the police information that the crime was going to be committed, where there was no evidence of entrapment and there was sufficient evidence of defendant's guilt of independent origin from the informant's tip.

2. Criminal Law § 66— identity of defendant — sufficiency of evidence

Evidence of defendant's identity as the driver of a getaway car which waited outside a home that had been broken and entered was properly submitted to the jury, where a police officer testified that he had known defendant for 12 years and that he recognized defendant as the driver of the automobile when defendant looked directly at him while he was 20-25 feet away and again when he was 150 feet away.

3. **Burglary and Unlawful Breakings § 5— intent to commit larceny — sufficiency of evidence**

  The evidence was sufficient to support a jury finding that defendants broke into and entered a home with the intent to commit larceny therein, notwithstanding defendants were apprehended by police officers immediately after entering the home and thus had no opportunity to steal any property.

4. **Criminal Law § 112— instructions — reasonable doubt — possibility of innocence**

  Construing the jury charge contextually, the trial court did not commit prejudicial error in defining reasonable doubt as a "possibility of innocence" in one part of the charge where throughout the charge the court instructed the jury they must be convinced of defendant's guilt beyond a reasonable doubt.

APPEAL by defendant from *Hobgood, Judge,* 5 April 1971 Session of Superior Court, DURHAM County.

The defendant, Nathaniel Lee Perry, Jr., and three others were charged under an indictment, proper in form, with breaking and entering the dwelling of Eugene Bartlett in Durham, North Carolina, on 4 March 1971 with the intent to commit the felony of larceny in violation of G.S. 14-54(a). Defendant entered a plea of not guilty and the others entered pleas of guilty. The jury found defendant guilty of felonious breaking and entering, and he was sentenced to not less than eight nor more than ten years in prison. From the judgment of the court, defendant appealed.

*Attorney General Morgan, by Associate Attorney Payne, for the State.*

*William H. Murdock and Felix B. Clayton for defendant appellant.*

MORRIS, Judge.

The evidence for the State tends to show that Dr. Eugene Bartlett and his family lived in a home located 1/4 of a mile down a private driveway off Infinity Road in Durham County. There are three other houses located on the same private driveway. Durham County Deputy Sheriff Utley phoned the Bartletts on 3 March 1971 and told them that based upon information from a confidential informant, he believed that their house was going to be broken into. The police suspected that someone would try to steal a valuable collection of firearms kept by Dr. Bartlett in his home. Deputy Utley asked permission to attempt to ap-

prehend the people who were going to break in by setting up a stakeout in the Bartlett house the next morning. Deputy Utley and Detective Martin of the Durham Police Department arrived at the house before 8:00 a.m. on 4 March 1971, and Dr. Bartlett then left with his children. After the officers had arrived, the phone rang once, Mrs. Bartlett answered and the caller hung up without saying anything. The State's evidence shows that there is a public telephone booth about 1½ miles away from the Bartlett home. Five minutes later at about 8:30 a.m., Mrs. Bartlett and her mother left. Deputy Utley and Detective Martin were left alone in the house and hid in a bathroom off the kitchen. At about 10:15 a.m. the telephone rang nine times and approximately 15 minutes later, the phone rang 15 more times. The officers didn't answer the phone either time. About five minutes later, the officers heard a car in the driveway and then the doorbell rang eight or ten times. Soon thereafter, they heard glass breaking, the back door opening and people entering the house. A few seconds later, Deputy Utley and Detective Martin stepped out from the bathroom into the kitchen where they observed three men. Holding shotguns, the officers told the three suspects to freeze but one of them ran outside. Detective Martin gave chase and when he was 25-30 feet away, pointed his shotgun at the man who fell to his knees, threw his arms over his head and said "Oh, God, don't shot me." While outside the house, Detective Martin observed a gold Pontiac G.T.O. automobile parked in the driveway 20-25 feet away. Detective Martin saw a man under the steering wheel with his head turned over his shoulder looking directly at him through the side window and identified him as the defendant. The automobile immediately took off at a high rate of speed down the private driveway and as he made the left turn onto Infinity Road approximately 150 feet away, the driver turned and again looked directly at Detective Martin. Detective Martin had known the defendant for 12 years, had seen defendant drive a gold Pontiac G.T.O. on previous occasions and was positive he recognized the defendant on the day in question.

Detective Utley heard the automobile leave at a rapid rate of speed, but he was inside the house and never saw the occupant of the car. A neighbor who lives about one block away from the Bartlett house saw a gold colored automobile with four men in it pass by slowly going towards the Bartlett house at about 10:30 in the morning. Five minutes later she saw the

same car coming from the direction of the Bartlett house at a high rate of speed down the private driveway with only one man in it. The defendant presented no evidence, and his motions for nonsuit were denied.

[1] Defendant assigns as error the refusal of the court to compel disclosure of the confidential informant's identity and the content of his communications. In order to sustain a conviction for felonious housebreaking, the State must prove an unlawful breaking or entering of the dwelling house of another with the intent to commit a felony or other infamous crime therein. *State v. Cook,* 242 N.C. 700, 89 S.E. 2d 383 (1955). Defendant contends that the "felonious intent" in this case can only be proved by information supplied by the unidentified informant; and that according to *State v. Fletcher and State v. Arnold,* 279 N.C. 85, 181 S.E. 2d 405 (1971), disclosure of the informant's identity is essential to lessen the risk of false testimony by him. In *Fletcher, supra,* both defendants relied upon the defense of entrapment to support their assignment of error. Here the defendant contends that he knew nothing about the robbery. By denying his guilt, defendant's case is factually distinguishable from that of *Fletcher, supra,* and *State v. Swaney,* 277 N.C. 602, 178 S.E. 2d 399 (1971), appeal dismissed 402 U.S. 1006, 29 L.Ed. 2d 428, 91 S.Ct. 2199, applies instead, wherein the Court, through Justice Moore, said:

> " 'It is the general rule, subject to certain exceptions and limitations . . . that the prosecution is privileged to withhold from an accused disclosure of the identity of an informer.' (Citation omitted.) 'The privilege is founded upon public policy, and seeks to further and protect the public interest in effective law enforcement. It recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law enforcement officers, and by preserving their anonymity, encourages them to perform that obligation. The privilege is designed to protect the public interest, and not to protect the informer.' (Citation omitted.) The propriety of disclosing the identity of an informer depends on the circumstances of the case. (Citations omitted.) " At p. 608.

There was no evidence of entrapment in this case, and there is sufficient evidence of defendant's guilt, which is of an in-

dependent origin and not from the informant's tips, to convict him. Thus under the circumstances of this case we hold that the refusal of the court to disclose the identity of the informant was proper. This assignment of error is overruled.

[2] Defendant also assigns as error the court's refusal to grant motions of nonsuit at the end of the State's evidence and at the end of all the evidence. It is well settled that upon a motion for nonsuit in a criminal action, the evidence must be interpreted in the light most favorable to the State and all reasonable inferences favorable to the State must be drawn from it. *State v. Miller*, 270 N.C. 726, 154 S.E. 2d 902 (1967), and cases cited therein. The facts here tend to show that the witness Martin had known the defendant for 12 years prior to the time of this particular incident; that he was approximately 20-25 feet away from the defendant when he first saw him; and that he was 150 feet away when defendant stared at him a second time. The court properly allowed the jury to determine the weight to be given to Martin's testimony. *State v. McClain*, 4 N.C. App. 265, 166 S.E. 2d 451 (1969).

[3] To withstand the motion for nonsuit, there must also be substantial evidence of all material elements of the offense, and it is immaterial whether the substantial evidence be circumstantial or direct or both. *State v. Jacobs*, 6 N.C. App. 751, 171 S.E. 2d 21 (1969). The defendant contends that there was not sufficient evidence of felonious intent to go to the jury. "If a person breaks or enters . . . with intent to commit the crime of larceny he does so with intent to commit a felony, without reference to whether he is completely frustrated before he accomplishes his felonious intent. . . . (H)is criminal conduct is not determinable on the basis of the success of his felonious venture." *State v. Nichols*, 268 N.C. 152, 154, 150 S.E. 2d 21, 22-23 (1966). In this case there was enough evidence of the material elements of the crime to submit the case to the jury, and the motions for nonsuit were properly denied.

[4] The court in charging the jury gave the following instructions:

> "All the evidence has been presented, you have heard the able arguments of counsel representing the defendant and the Solicitor representing the State. This defendant Nathaniel L. Perry has entered a plea of not guilty. The fact that he has been indicted as charged is no evidence of his

guilt. Under our system of justice if a defendant pleads not guilty *he is not required to prove his innocence. He is presumed to be innocent. The State must prove to you that the defendant is guilty beyond a reasonable doubt.*

(When I speak of reasonable doubt I mean a possibility of innocence based on reason and common sense arising out of some or all of the evidence that has been presented, or lack of evidence, as the case may be.) EXCEPTION No. 8.

If after weighing and considering all of the evidence you are fully satisfied and entirely convinced of the defendant's guilt, you would be satisfied beyond a reasonable doubt. On the other hand, if you have any doubt based on reason and common sense arising from the evidence in the case or the lack of evidence as to any fact necessary to constitute guilt, you would have a reasonable doubt and it would be your duty to give the defendant the benefit of that doubt and to find him not guilty." (Emphasis supplied.)

The court properly instructed the jury concerning aiding and abetting, and throughout his charge, instructed them that they must be convinced of defendant's guilt beyond a reasonable doubt. The defendant assigns as error that portion of the charge above which defines reasonable doubt, contending that by defining it in terms of a "possibility of innocence," the court has shifted the burden of proof from the State to the defendant. In the absence of a request by the defendant, the court is not required to define reasonable doubt. *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755 (1971) ; *State v. Potts,* 266 N.C. 117, 145 S.E. 2d 307 (1965). Our Supreme Court has said that when the trial judge undertakes to define the term reasonable doubt, the definition should be in substantial accord with definitions approved by them, but that the law does not require any set formula in defining reasonable doubt. *State v. Hammonds,* 241 N.C. 226, 85 S.E. 2d 133 (1954). Construing the entire charge contextually, we find that the charge as a whole to be correct and not prejudicial to the defendant. *State v. Gatling,* 275 N.C. 625, 170 S.E. 2d 593 (1969), and cases cited therein. Defendant's exception to the charge is overruled.

We have carefully examined and considered defendant's other assignment of error and find it to be without merit.

Affirmed.

Judges CAMPBELL and PARKER concur.