CLARK, C. J., dissenting.
This was indictment for capital offense of burglary. There was evidence on the part of the State tending to support the charge as made. Evidencecontra on part of defendant. The court, among other things, charged the jury that on the bill of indictment and testimony they could render either of three verdicts:
1. Guilty of burglary in the first degree.
2. Guilty of breaking and entering the dwelling-house of another otherwise than by burglarious breaking. Revisal, sec. 3333.
3. Not guilty.
The jury rendered the following verdict:
"We, the jury, find the defendant guilty of housebreaking, with no intent to commit a felony. The jury especially asks the mercy of the court."
On the verdict there was motion to discharge prisoner as on (453) verdict of acquittal. Motion overruled, and defendant excepted. His Honor being of opinion that the verdict as rendered amounted to a conviction of the second offense under section 3333, Revisal, sentenced the prisoner to twelve months on the public roads, and defendant excepted and appealed.
After stating the case: Section 3333 of the Revisal is in the following words: "If any person shall break or enter a dwelling-house of another otherwise than by a burglarious breaking; or shall break and enter a storehouse, shop, warehouse, banking house, counting *Page 363 
house, or other building, where any merchandise, chattel, money, valuable security, or other personal property shall be; or shall break and enter any uninhabited house, with intent to commit a felony or other infamous crime therein; every such person shall be guilty of a felony, and imprisoned in the State's Prison or county jail not less than four months, nor more than ten years."
So far as the form is concerned, it has been held that under an indictment charging the capital crime of burglary, a conviction may be had of the offense constituted and described in this section of the Revisal, and the question presented by this appeal is on the proper significance of the verdict rendered by the jury. This same law is in The Code of 1883, sec. 996, except that in the clause in section 996, "or shall break and enter any uninhabited house with intent to commit a felony or other infamous crime therein," there is a semicolon between the words "uninhabited house" and the words "with intent to commit a felony," instead of a comma, the divisional pause in the present law. Construing the law as it appeared in section 996 of The Code, the Court has expressly held that the "intent to commit a felony or other infamous crime" was an essential ingredient of the offense (S. v. Christmas, 101 N.C. 749;S. v. McBride, 97 N.C. 393), and we are of opinion that a like construction should prevail in reference to the present statute. If the Legislature had intended that the criminal purpose specified should be confined to the last substantive clause of the statute, (454) to wit, the "breaking into an uninhabited house," there was no occasion for a pause of any kind between these words and the criminal intent which follows; as a matter of strict interpretation, a comma as well as a semicolon would serve to prevent such a meaning and to attach the intent to all of the former clauses of the section. And if there were doubt about this as a mere matter of punctuation, the character of the offense and serious nature of the punishment would impel the Court to its present conclusion. This section of the Revisal is grouped with the crime of burglary and other kindred offenses in which the technical "breaking" may be effected by lifting a latch or the turning of a knob, the house being otherwise closed (Clark's Criminal Law (2 Ed.), p. 262); and it cannot be that the Legislature had any purpose to make it a felony where a wayfarer or a neighbor had so entered an unlocked shop or warehouse, seeking shelter from a storm or other hindrance.
Again, the first portion of this section is in the disjunctive, "If any one shall break or enter the dwelling-house of another," the design evidently being to afford greater protection to the dwelling, and to hold such an entry a crime in itself, detached from the felonious intent *Page 364 
in the later clause of the law, would make it a criminal offense to enter the dwelling of another for the most innocent purpose, even to make a social call. It is clear, therefore, that the present statute should receive the same construction as the former; that the crime is only committed when the houses designated are entered or broken into "with intent to commit a felony or other infamous crime therein"; and the verdict of the jury having negatived this, an essential feature of the crime, amounts to a verdict of not guilty.
It was not controverted on the argument for the State that this was the proper construction of the statute, but it was insisted that the verdict of the jury was irresponsive and insensate, and this being true, that the prisoner should be held for further trial on the present bill.
In Clark's Criminal Procedure, p. 486, it is said: "A verdict (455) is not bad for informality or clerical errors in the language of it, if it is such that it can be clearly seen what is intended. It is to have a reasonable intendment, and it is to receive a reasonable construction, and must not be avoided except from necessity."
As far back as 7 N.C. 571, S. v. John Arrington, this principle was applied to a case where a defendant was indicted for horse stealing, and "the jury returned a verdict that the prisoner was not guilty of the felony and horse stealing, but guilty of a trespass. The trial court desired them to reconsider their verdict and say guilty or not guilty, and no more, and the jury thereupon retired and returned a verdict of guilty generally," and the Supreme Court on appeal ordered that the first finding of the jury be recorded as their verdict and the prisoner discharged; and in that case it was held further, "That whenever a prisoner in terms or effect is acquitted by the jury, the verdict as returned by them should be recorded." This decision was referred to in terms of approval in S. v. Godwin, 138 N.C. 586, and was again applied in the subsequent case of S. v. Whisenant,149 N.C. 515.
In the present case, the jury having expressly negatived the existence of any criminal intent on the part of the prisoner, and this, as we have seen, being an essential constituent of the offense charged, it must be held as the correct deduction from these decisions that the verdict is on of acquittal, and the motion of the prisoner for his discharge should have been allowed.
We have been referred to S. v. Hooker, 145 N.C. 582, as an authority directly opposed to our present position; but an examination of that case will disclose that this is not necessarily true. In Hooker's case the defendant had been acquitted on an indictment for larceny of certain goods, and he was then tried on a bill for breaking into a store with intent to steal the goods, and was convicted. On appeal, the question *Page 365 
chiefly presented was whether the defendant's plea of former acquittal should be allowed by reason of the first verdict. The plea was held bad on the ground that these were two entirely separate and distinct offenses, and the acquittal of one was therefore no bar (456) to the prosecution of the other. Having rested the decision on that ground, there was no cause to further construe the statute, and the portion of the opinion saying that the words of the present statute, "with intent to commit a felony or other infamous crime therein," should only apply to a "breaking into an uninhabited house," may well be considered as obiter dictum. As an authoritative construction of the statute, the position is not approved.
Reversed.