STATE v. JAMES ALLEN.

(Filed 24 October, 1923.)

**1. Burglary—Definition—Statutes.**

The common-law definition of burglary is a capital offense, i. e., the breaking into and entering of the "mansion or dwelling-house of another in the night-time, with an intent to commit a felony therein, whether the intent was executed after the burglarious act or not, has been changed by our statute (C. S., sec. 4232) dividing the crime into two degrees, first and second, with certain designated differences between them, with different punishment prescribed for each.

**2. Same—Degree of Burglary.**

Under the provisions of C. S., sec. 4232, burglary as a capital offense is when the dwelling-house so entered is actually occupied at the time of the burglarious entry as a sleeping apartment, and the lesser offense is where the apartment is not then actually so occupied.

STATE *v.* ALLEN.

### 3. Same—Instructions.

In order for an indictment to sustain a verdict of guilty of burglary in the first degree, it must not only charge the burglarious entry with the intent at the time, but must also charge the felony intended to be committed with sufficient definiteness, though the actual commission of the intended felony is not necessary to be charged or proven, or that it was committed at all.

### 4. Criminal Law—Rape—Intent.

By our statute, C. S., sec. 4204, rape is the ravishing and carnally knowing any female of the age of twelve or older by force and against her will, and for conviction of a burglarious entry into a dwelling, presently occupied by a female as a sleeping apartment, with intent to commit rape upon her person, it is necessary to charge in the indictment, and support it with evidence, that at the time of the entry into the dwelling the prisoner had this specific intent, whether he accomplished his purpose, notwithstanding any resistance on her part, or not.

### 5. Same—Instructions.

Where there is evidence of a burglarious entry into a dwelling-house sufficient to convict of the capital offense, and also of the lesser offense, it is reversible error for the trial judge to refuse or neglect to charge the different elements of law relating to each of the separate offenses, though a verdict of guilty of the lesser offense might have been rendered, and this error is not cured under a general verdict of guilty of the greater offense.

### 6. Same.

Where a burglarious breaking into a dwelling-house has been charged in the bill of indictment, and the evidence tends only to establish the capital felony, an instruction to the jury that they might return a verdict of guilty in either degree is erroneous.

### 7. Burglary—Intent—Evidence—Drunkenness.

While voluntary drunkenness may not excuse in law the commission of the crime of burglary in the first degree, it is competent to show that the mind of the prisoner at the time of the offense charged was so under the influence of liquor that he could not have had the intent necessary to constitute the crime.

### 8. Burglary—Rape—Evidence—Verdict.

Under the charge of the burglarious entry of a dwelling, etc., with intent to commit rape upon a female sleeping therein, and the supporting evidence: *Held*, in this case the judge should have charged the jury, according to their findings of fact, to render one of the five verdicts: (1) guilty of burglary in the first degree; (2) guilty of an attempt to commit burglary in the first degree; (3) guilty of nonburglarious breaking into and entering a dwelling-house of another with the intent to commit a felony or other infamous crime therein; (4) guilty of an attempt to commit the said last offense, or (5) not guilty.

CLARK, C. J., dissenting.

APPEAL by defendant from *Cranmer, J.*, at May Term, 1923, of FRANKLIN.

Criminal prosecution, tried upon a indictment charging the defendant with burglary in the first degree. The initial count in the bill is as follows:

"That James Allen, late of the county of Franklin, on the 13th day of April, in the year of our Lord 1923, with force and arms, at and in the county aforesaid, feloniously and burglariously, did break and enter, on or about the hour of 12 in the night of the said day, the dwelling-house of one A. B. Allen, there situate, and then and there actually occupied by the said A. B. Allen, his wife and family, with the felonious intent, he, the said James Allen, to forcibly and violently ravish and carnally know Mrs. A. B. Allen, a female occupying and sleeping in said dwelling-house at the time, without her consent and against her will, against the form of the statute in such case made and provided, and against the peace and dignity of the State."

There is also a second count in the bill, charging a felonious and burglarious breaking and entering of the occupied dwelling-house of A. B. Allen, in the night-time, with intent to commit the crime of larceny therein, but the case was not tried upon this count.

There is evidence on the record tending to show that the defendant entered the dwelling-house of A. B. Allen, in the town of Louisburg, some time after 11 o'clock on the night of 13 April, 1923, by raising a window in one of the rooms and putting a stick of wood under it to hold it up. After entering the house, and some time during the night, the defendant crawled under the bed in which Mr. and Mrs. Allen were sleeping, and thereafter the following happened, according to the testimony of Mrs. Allen:

"I was awakened that night, but I do not know at just what time. The first thing that awoke me was an ice-cold hand, and I almost jumped off the bed. The hand went back when I jumped, and in about a minute the hand came back again. That time it dawned on me it was not Mr. Allen. I was lying flat on my back, with my left hand under my head and my right hand down by my side. I reached out with my right hand and found that Mr. Allen's hand was warm. While I was reaching out for Mr. Allen, the hand came up the third time. I tried to whisper to my husband, fearing we would all be butchered. The ice-cold hand was under the bed-covering and touched my flesh, above my knee, three times, to my knowledge."

The defendant was convicted of burglary in the first degree and sentenced to death. He is a colored boy, 18 or 19 years of age. He testified that he was in a drunken condition during the night in question and did not know what he was doing. He entered a plea of not guilty to the charge.

The defendant requested the court to charge the jury that, before he could be convicted of burglary in the first degree on the initial count in the bill, it would be necessary for the State to show an intent on his part to accomplish his purpose, notwithstanding any resistance made by Mrs. Allen. This was refused, the court stating that an intent generally to commit a felony was sufficient. Defendant excepted.

From the verdict and judgment rendered, the defendant appealed, assigning errors.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*W. H. Yarborough, E. H. Malone, W. Y. Bickett, and J. E. Malone, Jr., for defendant.*

STACY, J., after stating the case: Burglary, at common law, was the breaking and entering of the "mansion-house," or the dwelling-house, of another, in the night-time, with intent to commit a felony therein, whether such intent were executed or not. *S. v. Langford,* 12 N. C., 253; *S. v. Willis,* 52 N. C., 190; 4 R. C. L., 415; 9 C. J., 1009. It was among the few cases, if not the only one, where crime in the highest degree was not dependent upon the execution of the felonious intent. The purpose of the law was to protect the habitation of men, where they repose and sleep, from meditated harm. And such was the law of burglary in this State until the passage of the act of 1889, now C. S., 4232, by which the crime was divided into two degrees, first and second, with certain designated differences between the two, and with different punishments prescribed therefor. *S. v. Foster,* 129 N. C., 704; C. S., 4233. Now, under our statute, the first degree is where the crime is committed "in a dwelling-house, or in a room used as a sleeping apartment in any building, and any person is in the actual occupation of any part of said dwelling-house or sleeping apartment at the time of the commission of such crime, it shall be burglary in the first degree." Second: "If such crime be committed in a dwelling-house or sleeping apartment not actually occupied by any one at the time of the commission of the crime, or if it be committed in any house within the curtilage of a dwelling-house or in any building not a dwelling-house, but in which is a room used as a sleeping apartment and not actually occupied as such at the time of the commission of the crime, it shall be burglary in the second degree."

But it is not enough in an indictment for burglary to charge generally an intent to commit "a felony" in the dwelling-house of another. The particular felony which it is alleged the accused intended to commit must be specified. *People v. Nelson,* 58 Cal., 104; *Portwood v. State,*

20—186

29 Tex., 47; *S. v. Doran,* 99 Me., 329. The felony intended, however, need not be set out as fully and specifically as would be required in an indictment for the actual commission of said felony, where the State is relying only upon the charge of burglary. It is ordinarily sufficient to state the intended offense generally, as by alleging an intent to steal the goods and chattels of another then being in said dwelling-house, or to commit therein the crime of larceny, rape, or arson. *S. v. Staton,* 133 N. C., 643; *S. v. Ellsworth,* 130 N. C., 690; *S. v. Tytus,* 98 N. C., 705; *S. v. Christmas,* 101 N. C., 755. But it is necessary, in order that the charge may be certain, to state the particular felony which it is claimed the accused intended to commit. *S. v. Buchanan,* 75 Miss., 349; *S. v. Celestin,* 138 La., 407.

The actual commission of the intended felony, however, is not essential to the crime of burglary. *S. v. Beal,* 37 Ohio St., 108; 41 Am. Rep., 490. This is completed or consummated by the breaking and entering of the dwelling-house of another, in the night-time, with the immediate, requisite intent then and there to commit a designated felony therein, though, after entering the house, the accused may forsake his intent to commit the felony, through fear or because he is resisted. *S. v. Mc-Daniel,* 60 N. C., 245; *Warren v. State,* 103 Ark., 165. Indeed, burglary in the first degree, under our statute, consists of the intent, which must be executed, of breaking and entering the presently occupied dwelling-house or sleeping apartment of another, in the night-time, with the further concurrent intent, which may be executed or not, then and there to commit therein some crime which is in law a felony. This particular, or ulterior, intent to commit therein some designated felony, as aforesaid, must be proved, in addition to the more general one, in order to make out the offense. *S. v. Meche,* 42 La. Ann., 273; 7 So., 573. The crucial question in regard to the ulterior intent, in an indictment for burglary, is: What was the prisoner's intent at the time of the breaking and entry? The offense against the habitation is complete when the burglarious breaking and entering of the dwelling-house or sleeping apartment of another, in the night-time, is effected or accomplished, with the intent to commit a felony therein, though that intent may be subsequently abandoned and the intended felony is not committed. *Conners v. State,* 45 N. J. L., 340. Hence it is no defense to an indictment for burglary that the ulterior felonious intent was abandoned after the breaking and entry. *S. v. Boon,* 35 N. C., 244.

Three elements, at common law, were necessary to constitute the crime of rape, to wit, carnal knowledge, force, and the commission of the act without the consent or against the will of the ravished. *S. v. Jim,* 12 N. C., 142; 22 R. C. L., 1172. By our statute, C. S., 4204, rape is defined as the "ravishing and carnally knowing any female of the age

of 12 years or more by force and against her will," with the further statement as to what constitutes rape when the female is under that age. *S. v. Marsh,* 132 N. C., 1000. So, under the charge of a felonious and burglarious breaking and entering of the presently occupied dwelling-house or sleeping apartment of another, in the night-time, with intent to commit the crime of rape upon the person of any female therein, it is necessary, before the prisoner can be convicted of burglary in the first degree, to show the requisite, specific intent on his part, at the time of the breaking and entry, of gratifying his passions on the person of the woman, and that he intended to do so, at all events, notwithstanding any resistance on her part. *S. v. Massey,* 86 N. C., 658. This must have been his intent at the time of the breaking and entry, in order to constitute the capital offense of burglary in the first degree, with which he is charged, but it is not necessary that such intent should be executed or carried out. 9 C. J., 1032. See *Vickery v. State,* Ann. Cas., 1913, C., 514, where a full and satisfactory note covering the whole subject will be found.

The general as well as the specific intent with which the prisoner entered the dwelling-house, or sleeping apartment, of another may be proved by circumstances, or inferred by the jury from the facts in evidence. *People v. Winters,* 93 Cal., 277; *Com. v. Shedd,* 140 Mass., 451; *S. v. Peebles,* 178 Mo., 475.

Whether the ulterior criminal intent existed in the mind of the person accused, at the time of the alleged criminal act, must of necessity be inferred and found from other facts, which in their nature are the subject of specific proof. It must ordinarily be left to the jury to determine, from all the facts and circumstances, whether or not the ulterior criminal intent existed at the time of the breaking and entry. In some cases the inference will be irresistible, while in others it may be a matter of great difficulty to determine whether or not the accused committed the act charged with the requisite criminal purpose. *McCourt v. People,* 64 N. Y., 583.

Applying the above test to the facts of the instant case, we think the prisoner was entitled to the charge as requested, and that the court erred in declining to give it. *S. v. Williams,* 120 Iowa, 36; 94 N. W., 255.

Again, it is a well-recognized rule of practice with us that where one is indicted for a crime, and under the same bill it is permissible to convict him of "a less degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a less degree of the same crime" (C. S., 4640), and there is evidence tending to support a milder verdict, the prisoner is entitled to have the different views presented to the jury, under a proper charge, and an error in this respect is not cured by a verdict convicting the prisoner of the crime as charged

in the bill of indictment, for in such case it cannot be known whether the jury would have convicted of a less degree or of an attempt if the different views, arising upon the evidence, had been correctly presented to them by the trial court. *S. v. Williams,* 185 N. C., 685, and cases there cited.

The number of verdicts which the jury may render on an indictment for burglary in the first degree, under our present procedure, must be determined by the evidence and the manner in which the bill of indictment is drawn. There are three recognized ways in which the bill may be drawn with · respect to the intended felony: (1) By charging the breaking and entry to be with intent to commit a designated felony; (2) by charging the breaking and entry, and a designated felony actually committed; and (3) by charging the breaking and entry, with intent to commit a designated felony, and also charging the actual commission of said felony. *S. v. Johnston,* 119 N. C., 897, and authorities cited.

Under the last form just mentioned, the prisoner may be convicted of burglary in the first degree, or of burglary in the second degree, depending on whether or not the dwelling-house was actually occupied at the time, or of an attempt to commit either of said offenses, or he may be convicted of a nonburglarious breaking and entering of the dwelling-house of another, under C. S., 4235, or of an attempt to commit said offense, though the State may fail to prove the commission of the felony as charged. *S. v. Fleming,* 107 N. C., 905; *S. v. Spear,* 164 N. C., 452. On the other hand, the defendant may be convicted of the designated felony as charged, "or of a less degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a less degree of the same crime," though the State may fail to prove the burglary. Archbold's Cr. Pr. & Pl., 1076 and 1108; *S. v. Jordan,* 75 N. C., 27; *S. v. Allen,* 11 N. C., 356; *S. v. Grisham,* 2 N. C., 13.

But under the present bill of indictment the prisoner is not charged with the actual commission of a felony in the dwelling-house of A. B. Allen, and there is no evidence tending to show that the crime might have been committed under circumstances which would make it burglary in the second degree, unless the jury disbelieves the evidence relating to occupancy. *S. v. Alston,* 113 N. C., 666. All the evidence tends to show that said dwelling-house was actually occupied at the time of the alleged offense. Under these circumstances, according to our previous decisions, an instruction that "the jury may render a verdict (of burglary) in the second degree if they deem it proper to do so" (C. S., 4641) would be erroneous, though a verdict of burglary in the second degree, being favorable to the prisoner, would be permitted to stand. *S. v. Johnston,* 119 N. C., 883; *S. v. Fleming, supra; S. v. Alston, supra.* See, also, *S. v. Alexander,* 56 Mo., 131.

The evidence offered by the prisoner is to the effect that he was in a drunken condition during the night in question, and did not know where he was or what he was doing. Voluntary drunkenness, of course, furnishes no excuse for crimes committed under its influence. But this evidence was competent as bearing upon the alleged felonious intent. *S. v. English,* 164 N. C., 498. "Although drunkenness, in point of law, constitutes no excuse or justification for crime, still, when the nature and essence of a crime is made, by law, to depend upon the peculiar state and condition of the criminal's mind at the time, and with reference to the act done, drunkenness, as a matter of fact, affecting such state and condition of the mind, is a proper subject for consideration and inquiry by the jury. The question in such a case is, What is the mental status? . . . To regard the fact of intoxication as meriting consideration in such a case is not to hold that drunkenness will excuse crime, but to inquire whether the very crime which the law defines and punishes has, in point of fact, been committed." *Reese, J.,* in *Swan v. The State,* 4 Hump., 136; 23 Tenn., 99; *S. v. Murphy,* 157 N. C., 614.

Without the ulterior felonious intent, as already suggested, the crime of burglary, as charged, would not be complete; and if the prisoner, without any prior criminal intent, were so drunk at the time as not to know where he was or what he was doing, and had no intention of committing a felony in the dwelling-house, as alleged, whatever his offense, he would not be guilty of burglary in the first degree, because of the absence of an essential ingredient of the crime. *S. v. Bell,* 29 Iowa, 316.

Hence, it follows that, under the present bill of indictment and the evidence now of record, the jury should be instructed that one of five verdicts may be rendered by them, depending, of course, upon how they find the facts to be: (1) Guilty of burglary in the first degree; (2) guilty of an attempt to commit burglary in the first degree; (3) guilty of a nonburglarious breaking and entering of the dwelling-house of another, with intent to commit a felony or other infamous crime therein; (4) guilty of an attempt to commit the said last-named offense; or (5) not guilty. See *S. v. Spear,* 164 N. C., 452, and *S. v. Merrick,* 171 N. C., 788.

The prisoner is entitled to a new trial; and it is so ordered.

New trial.

CLARK, C. J., dissenting: The prisoner, a negro, 18 or 19 years old, is charged with burglary, in breaking into the dwelling-house of one A. B. Allen, in the night-time, occupied at the time by himself and family, with the felonious intent to ravish his wife, then and there sleeping in said dwelling-house, etc. The evidence for the State shows that the defendant entered said dwelling-house some time after 11 o'clock on the

night of 13 April, 1923, by raising a window in one of the rooms and putting a stick of wood under it to hold it up, and after entering the house, and some time during the night, he crawled under the bed in which Mrs. Allen was sleeping, and thereafter the following happened, according to her testimony: "I was awakened that night, but I do not know just what time. The first thing that woke me was an ice-cold hand, and I almost jumped off the bed. The hand went back when I jumped, and in about a minute the hand came back. That time it dawned on me it was not Mr. Allen. I was lying flat on my back, with my left hand under my head and my right hand down by my side. I reached out with my right hand and found that Mr. Allen's hand was warm. While I was reaching out for Mr. Allen the hand came up the third time. I tried to whisper to my husband, fearing we would all be butchered. The ice-cold hand was under the bed-clothes and touched my flesh, above my knee, three times, to my knowledge." The jury convicted the prisoner of burglary in the first degree.

The prisoner testified that he was in a drunken condition on the night in question and did not know what he was doing. If this were a valid precedent, as a defense, it would leave our women unprotected in their homes at night, at the mercy of any brute who will testify, or even prove, that he was partially intoxicated. He could not have been wholly so, for the evidence is that he entered a window by putting a stick thereunder to hold it. Besides, there was no prayer and no assignment of error upon the ground that the prisoner was drunk.

The prayer, on the refusal of which the prisoner rests his defense, was that the court should "charge the jury that, before he could be convicted of burglary in the first degree on the initial count of the bill, it would be necessary for the State to show an intent on his part to accomplish his purpose, notwithstanding any resistance made by Mrs. Allen." This was refused, the court stating that "an intent generally to commit the felony was sufficient." This was correct, upon all the precedents. There is no case, it is believed, on record that the charge thus prayed has ever been held necessary for any indictment for burglary with intent to ravish. The only case that has been cited to sustain the prayer for such charge is *S. v. Massey,* 86 N. C., 658, but that was not a charge of burglary, but of an assault with intent to commit rape. The charge here is not burglary with *"attempt"* to commit rape, but of burglary with an intent to do so. That is a charge with a simple intent, and upon this evidence the jury found, and it would have been difficult for them, upon the uncontradicted testimony, to have found otherwise if they believed the evidence, than that the negro, entering burglariously, concealed himself under a white woman's bed, did not have the intent to commit that crime.

Indeed, there is no substantial denial of the facts charged and proven as above by the State. It was not necessary that the bill should charge that the rape was accomplished. Indeed, if the facts satisfy the jury that he entered, as charged, with the intent to commit rape, it would not be a defense that he had abandoned such intent after entering. Wherefore is it necessary to charge and prove that he intended to "persist in his intent, in spite of any opposition"?

There is nothing in the nature of this crime that makes it desirable or advisable for the court to create and engraft a new technicality as a defense against the conviction upon the facts of this case. There is no evidence that the prisoner knew that the husband was in the room. This may account for the boldness or rashness of his attempt. He certainly did not expect to be arrested. He entered the house burglariously, and the evidence was sufficient to show the jury, if they believed it, that the entrance was made with the intent charged. The jury has so found.

The burglary was committed by entering the dwelling-house of another in the night-time with intent—not with the *attempt*—to ravish, and there is no evidence tending to show any lesser degree of offense which would have justified the jury in finding the prisoner guilty of a lesser offense.

This is not an indictment for an attempt to commit burglary, nor for an attempt to commit rape, but is an indictment, in the approved form, for the crime of burglary, alleging as an ingredient an intent to commit rape. The precedents require no more to be charged, and the evidence was sufficient, if believed, to justify the jury in finding such verdict. It was not necessary to charge or prove a greater degree than intent to commit rape, and there is no evidence in this record which required the judge to submit to the jury any lesser offense than that charged. If the testimony was true, the prisoner entered the house burglariously with the intent to commit the crime charged, and there is no evidence of any lesser offense to be submitted to the jury.

The prisoner assigned as error the exclusion of the answer of the witness Beasley to the following question: "Do you know James Allen's mental condition on the day in question, and had you observed him before then?" The State objected. The witness said he had only observed him one time. The counsel for defendant proposed to prove by witness that the defendant was not of average intelligence, and on the day of this occurrence refused to take pay for three or four hours work, and that he did not consider him of average mental capacity. The exclusion of the answer to this question was correct. *S. v. Journegan*, 185 N. C., 700. This was the first exception, and the second assignment was to the exclusion of the question whether the prisoner's father and grandfather were not the same man.

The prisoner also objected that, upon inquiry of the jury, the court instructed them that they could not find the prisoner guilty of burglary in the second degree. This was correct. *S. v. Johnston,* 119 N. C., 883, citing *S. v. Alston,* 113 N. C., 666.

There was no error as to the judge's statement in the charge of the jury, in the presence of counsel, that there was no contention as to the number of persons in the house at the time, nor as to the offense being committed in the night-time, nor was it error not to define the crime of larceny, an intent to commit which was charged in the second count, for the prisoner was tried and convicted on the first count.