STATE OF NORTH CAROLINA v. MICHAEL JEROME WORSLEY

No. 413A92

(Filed 6 May 1994)

**1. Rape and Allied Offenses § 82 (NCI4th)— first-degree rape — sufficiency of evidence**

There was sufficient evidence to support submission of first-degree rape to the jury where the evidence tended to show that defendant entered the victim's apartment, stabbed her and dragged her outside to a grassy common area where he continued to stab her; a neighbor awakened by the victim's screams looked out a window and saw defendant straddling the victim and "almost laying on top of her"; police discovered that a rock twelve to fifteen inches long and twelve inches wide had been thrown through the back window of the victim's apartment; the officers followed a trail of blood from the grassy common area through the back door and into the living room, where the officers found patches of blood on the sofa; officers found more blood on the sofa than in any other part of the apartment; the trail led from the sofa to the victim's upstairs bedroom, where officers found another spattering of blood; an autopsy revealed that the victim died as a result of a number of stab wounds to her neck, but also suffered stab wounds to her face, chest and arms; and there were no injuries to her vaginal area, but vaginal and rectal smears revealed the presence of semen and semen was found on her underwear. The evidence, taken as a whole and in the light most favorable to the State, was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the defendant engaged in vaginal intercourse with the victim by force and against her will while either employing a dangerous weapon or inflicting serious personal injury.

**Am Jur 2d, Rape §§ 88 et seq.**

**Sufficiency of allegations or evidence of serious bodily injury to support charge of aggravated degree of rape, sodomy, or other sexual abuse. 25 ALR4th 1213.**

2. **Rape and Allied Offenses § 120 (NCI4th)— attempted first-degree rape—evidence sufficient**

There was sufficient evidence of attempted first-degree rape to warrant an instruction by the trial court where the evidence tended to show that defendant entered the victim's apartment in the early morning hours, stabbed her and dragged her outside to a grassy common area where he continued to stab her; a neighbor awakened by the victim's screams saw defendant straddling the victim and "almost laying on top of her"; police discovered that a large rock had been thrown through the back window of the apartment; the officers followed a trail of blood from the grassy common area through the back door of the apartment into the living room, where there were patches of blood on the sofa, then from the sofa to the victim's upstairs bedroom, where more blood was found; the victim's underwear was not torn, there was no transfer of pubic hairs, there was no injury to the victim's vaginal area, and the blood type of semen found on and in her body could not be conclusively determined. There was considerable evidence from which the jury could reasonably infer that defendant intended to commit first-degree rape and committed an act which exceeded mere preparation but which fell short of the actual commission of first-degree rape.

**Am Jur 2d, Rape §§ 88 et seq.**

**Sufficiency of allegations or evidence of serious bodily injury to support charge of aggravated degree of rape, sodomy, or other sexual abuse. 25 ALR4th 1213.**

3. **Burglary and Unlawful Breakings § 58 (NCI4th)— first-degree burglary—intent to rape—intent to murder—evidence sufficient**

There was sufficient evidence to support submission of first-degree burglary to the jury where there was sufficient evidence to support the jury's finding that defendant attempted to rape the victim. Additionally, a rational trier of fact could conclude that defendant entered the victim's apartment with the intent to commit murder since the evidence tended to

show that defendant stabbed her to death following his entry into her home.

**Am Jur 2d, Burglary §§ 44 et seq.**

4. **Homicide §§ 281, 279 (NCI4th) — felony murder — evidence of burglary and rape sufficient — evidence of felony murder sufficient**

There was sufficient evidence to submit felony murder to the jury where the evidence of the underlying felonies, burglary and rape, was sufficient.

**Am Jur 2d, Homicide § 442.**

5. **Burglary and Unlawful Breakings § 43 (NCI4th) — first-degree burglary — indictment — felony defendant intended to commit — not specified — sufficient**

A first-degree burglary indictment was sufficient even though it did not specify the felony defendant intended to commit when he entered the victim's apartment. Although previous cases have held that a burglary indictment must specify the particular felony the defendant is alleged to have intended to commit, such cases were decided prior to the enactment of N.C.G.S. § 15A-924(a)(5). The indictment in the present case satisfies the requirements of the statute; if defendant was in need of further factual information, he need only have moved for a bill of particulars.

**Am Jur 2d, Burglary § 36.**

6. **Searches and Seizures § 28 (NCI4th) — burglary, rape, murder — warrantless entry into defendant's home — exigent circumstances**

The trial court did not err by denying defendant's motion to suppress physical evidence seized from his home and statements made following his arrest where officers arrived at the scene of the murder to find the victim's body lying in a grassy common area of the apartment complex; she had been the victim of a brutal stabbing; an eyewitness identified defendant as the killer and another witness informed officers that he had seen defendant running toward the defendant's apartment shortly after the murder; the officers went to defendant's nearby apartment and discovered fresh blood on the doorknob; they had no way of knowing whether defendant

STATE v. WORSLEY

[336 N.C. 268 (1994)]

was alone or might be harming someone else; they knocked loudly and announced themselves, but received no response; and they entered the apartment and found defendant. These uncontroverted facts constituted exigent circumstances sufficient to justify the officers' warrantless, nonconsensual entry into the defendant's home to effect his arrest.

**Am Jur 2d, Searches and Seizures § 76.**

7. **Searches and Seizures § 57 (NCI4th)— burglary, rape, murder—defendant's bloody bed sheet—officers lawfully present—admissible**

A bloody bed sheet was admissible in a prosecution for burglary, rape and murder where officers arriving at the scene found the victim in a common area; she had been brutally stabbed; a witness identified defendant and another indicated that defendant had run toward his apartment; officers found blood on the doorknob of defendant's apartment, knocked and announced themselves but received no answer; entered and found defendant lying in bed; and noticed blood on the sheet. The sheet was in plain view of the officers while they were lawfully on the premises.

**Am Jur 2d, Searches and Seizures § 161.**

8. **Searches and Seizures § 71 (NCI4th)— burglary, rape, murder—search of defendant's apartment—consent of wife**

Evidence obtained as a result of the consent of defendant's wife for a search of their apartment was admissible in a prosecution for burglary, rape, and murder. Although it has been held in the past that a wife has no authority to consent to a search of the home she shares with her husband, those cases have been effectively overruled by N.C.G.S. §§ 15A-221 and -222. Moreover, the prior cases were likely premised on the now untenable view that the husband was the master of the wife.

**Am Jur 2d, Searches and Seizures § 100.**

**Admissibility of evidence discovered in search of defendant's property or residence authorized by defendant's spouse (resident or nonresident)—state cases. 1 ALR4th 673.**

9. **Evidence and Witnesses § 1219 (NCI4th)— burglary, rape, murder—statement by defendant—arrested without warrant— Miranda warnings**

A confession by a defendant in a burglary, rape, and murder prosecution was admissible even though defendant had been arrested in his home without a warrant, even assuming that the arrest was illegal, where defendant was fully advised of his rights at the police station.

**Am Jur 2d, Evidence §§ 545, 613.**

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment entered by Battle, J., on 5 June 1992, in the Superior Court, Chatham County, sentencing the defendant to life imprisonment for first-degree murder. Heard in the Supreme Court on 17 November 1993.

*Michael F. Easley, Attorney General, by Clarence J. DelForge, III, Assistant Attorney General, for the State.*

*Malcolm R. Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for the defendant-appellant.*

MITCHELL, Justice.

On 9 July 1991, a Chatham County Grand Jury indicted the defendant, Michael Jerome Worsley, for first-degree murder and first-degree burglary. The Grand Jury indicted the defendant for first-degree rape on 28 January 1992. He was tried capitally at the 22 May 1992 Criminal Session of Superior Court, Chatham County. The jury returned verdicts finding the defendant guilty of first-degree murder under the felony murder rule, first-degree burglary and attempted first-degree rape.

At the conclusion of a separate capital sentencing proceeding, the jury recommended a sentence of life imprisonment for the first-degree murder conviction. The trial court arrested judgment on the two underlying felonies and sentenced the defendant in accord with the jury's recommendation. The defendant appealed to this Court as a matter of right from the judgment sentencing him to life imprisonment for first-degree murder. *See* N.C.G.S. § 7A-27(a) (1989).

STATE v. WORSLEY

[336 N.C. 268 (1994)]

The evidence presented at the defendant's trial tended to show the following. The defendant and Ms. Anita Nettles lived in the same apartment complex in Pittsboro, North Carolina. In the early morning hours of 8 June 1991, the defendant, by his own admission, entered the apartment where Ms. Nettles lived with her three children, stabbed her, dragged her outside and continued to stab her. A neighbor who was awakened by Ms. Nettles' screams looked out of her apartment window and saw the defendant straddling Ms. Nettles in a grassy common area of the apartment complex. Two of Ms. Nettles' children were nearby screaming, "Don't hurt my mommy." Ms. Nettles was also begging the defendant not to hurt her. Another neighbor eventually came upon Ms. Nettles' body in the common area and called the police.

When the police arrived, they found that a large rock had been thrown through the back window of Ms. Nettles' apartment. A trail of blood led from the back door of the apartment into the living room, where there were patches of blood on the sofa. The trail then led upstairs to Ms. Nettles' bedroom, where the police found another spattering of blood. There was no evidence that any of Ms. Nettles' personal property had been removed.

After looking through the apartment, the officers spoke with Ms. Nettles' four-year-old son, Marcus, who told them that "Jerry" had stabbed his mother. The police later learned that the defendant used the name "Jerry" when talking with women who lived in the apartment complex. Another resident of the apartment complex told the police that he had seen the defendant running toward the defendant's apartment shortly after Ms. Nettles' murder.

The officers went to the defendant's apartment and found fresh blood on the doorknob of the back door. They knocked loudly and announced themselves as police officers. Receiving no response, they entered the front door of the apartment, which was unlocked. They found the defendant lying in bed with his wife and noticed blood on the bedsheet. The officers took the defendant into custody and read him the *Miranda* warnings. The defendant's wife then consented to a search of the apartment. During the course of their search, the officers discovered a pair of the defendant's pants with grass stains on both knees and blood (from both the defendant and Ms. Nettles) on the legs. They then placed the defendant in the Chatham County Jail.

STATE v. WORSLEY

[336 N.C. 268 (1994)]

The defendant initially refused to answer any of the officers' questions. Around twenty hours after his arrest, a police officer went to the defendant's cell to serve him with a warrant for first-degree burglary. The defendant told the officer that he wanted to talk. After the officer again read him the *Miranda* warnings, the defendant admitted that after smoking crack cocaine, he had entered Ms. Nettles' apartment, stabbed her and then dragged her outside where he continued stabbing her.

An autopsy revealed that Ms. Nettles died from a number of stab wounds to her neck. She also suffered stab wounds to her face, chest and arms. There were no injuries to her vaginal area and there had been no transfer of pubic or head hairs between the defendant and Ms. Nettles. Vaginal and rectal smears taken from Ms. Nettles' body revealed the presence of semen, however. An SBI forensic serologist also found semen on Ms. Nettles' underwear. The serologist could not conclusively determine the blood type of the semen.

Other pertinent evidence is discussed at other points in this opinion where it is relevant.

[1] By his first assignment of error, the defendant argues that the evidence was insufficient to support submission of first-degree rape to the jury. We disagree.

We have stated in detail on numerous occasions the rules to be applied in determining whether evidence introduced at trial will support submission of a charged offense to the jury. *E.g.*, *State v. Vause*, 328 N.C. 231, 236-37, 400 S.E.2d 57, 61 (1991); *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980); *State v. Powell*, 299 N.C. 95, 98-99, 261 S.E.2d 114, 117-18 (1980). When measuring the sufficiency of the evidence to support submission of a charged offense, "all evidence admitted, whether competent or incompetent, must be considered in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from the evidence and resolving in its favor any contradictions in the evidence." *State v. Williams*, 334 N.C. 440, 447, 434 S.E.2d 588, 592 (1993), *judgment vacated on other grounds*, --- U.S. ---, --- L. Ed. 2d --- (1994). A defendant's motion to dismiss "is properly denied if the evidence, when viewed in the above light, is such that a rational trier of fact could find beyond a reasonable doubt the existence of each element of the crime charged." *Id.*

In order to prove first-degree rape, it is sufficient that the State demonstrate that the defendant engaged in vaginal intercourse with another person by force and against the will of the other person and either (1) employed or displayed a dangerous weapon or (2) inflicted serious personal injury upon the victim or another person. N.C.G.S. § 14-27.2(a)(2) (1993). Viewed in the light most favorable to the State, there was sufficient evidence from which a rational trier of fact could find in the present case that the defendant engaged in vaginal intercourse with Ms. Nettles by force and against her will while either employing a dangerous weapon or inflicting serious personal injury upon her.

The evidence tended to show that in the early morning hours of 8 June 1991, the defendant entered Ms. Nettles' apartment, stabbed her and dragged her outside to a grassy common area where he continued to stab her. A neighbor who had been awakened by Ms. Nettles' screams looked out of her apartment window and saw the defendant straddling Ms. Nettles and "almost laying on top of her." When the police arrived at the scene, they discovered that a rock twelve to fifteen inches long and twelve inches wide had been thrown through the back window of Ms. Nettles' apartment. The officers also followed a trail of blood that led from the grassy common area through the back door of Ms. Nettles' apartment and into her living room, where the officers found patches of blood on the sofa. Indeed, the officers found more blood on the sofa than in any other part of the apartment. The trail then led from the sofa to Ms. Nettles' upstairs bedroom, where the officers found another spattering of blood.

An autopsy revealed that Ms. Nettles died as a result of a number of stab wounds to her neck. She also suffered stab wounds to her face, chest and arms. While there were no injuries to Ms. Nettles' vaginal area, vaginal and rectal smears taken from her body revealed the presence of semen. Semen was also found on Ms. Nettles' underwear.

The foregoing evidence, when viewed in the light most favorable to the State, supports a reasonable inference that in the early morning hours of 8 June 1991, the defendant approached Ms. Nettles' apartment and tossed a rock through the back window. He then reached through the hole in the window and unlocked the back door. He entered the apartment and went upstairs to Ms. Nettles' bedroom where he found her asleep. An initial struggle occurred

in the bedroom as indicated by the spattering of blood found there. The defendant dragged Ms. Nettles out of her bedroom and down the stairs to the living room sofa. From the considerable amount of blood found on the sofa and the semen found inside Ms. Nettles' body and on her underwear, a rational trier of fact could reasonably conclude that the defendant and Ms. Nettles remained on the sofa for some time while he stabbed and raped her. He then dragged her outside to the grassy common area where he straddled her, continued to stab her and possibly continued to rape her.

The defendant emphasizes, *inter alia*, that Ms. Nettles' underwear was not torn, that there was no evidence of any transfer of pubic or head hairs between the defendant and Ms. Nettles, that there was no injury to her vaginal area and that the SBI serologist who examined the semen found inside and on Ms. Nettles' body could not conclusively determine the blood type of the semen. As explained above, however, any contradictions in the evidence must be resolved in the State's favor.

We therefore conclude that the evidence in this case, taken as a whole and in the light most favorable to the State, was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the defendant engaged in vaginal intercourse with Ms. Nettles by force and against her will while either employing a dangerous weapon or inflicting serious personal injury upon her. The trial court thus did not err in denying the defendant's motions at the close of the State's evidence and at the close of all the evidence to dismiss the charge of first-degree rape. Accordingly, this assignment of error is without merit.

[2] The defendant contends by his second assignment of error that the evidence was insufficient to warrant the trial court's instruction on the lesser-included offense of attempted first-degree rape. Principles of due process "require[ ] that a lesser included offense instruction be given *only* when the evidence warrants such an instruction." *Hopper v. Evans*, 456 U.S. 605, 611, 72 L. Ed. 2d 367, 373 (1982); *see also State v. Arnold*, 329 N.C. 128, 139, 404 S.E.2d 822, 829 (1991); *State v. Boykin*, 310 N.C. 118, 121, 310 S.E.2d 315, 317 (1984). Underlying this rule is the realization that instructing the jury on a lesser-included offense that is not supported by the evidence improperly "invite[s] a compromise verdict whereby the defendant would be found guilty of an offense, which he did not commit, for the sole reason that some of the

jurors believe him guilty of the greater offense." *State v. Lampkins*, 286 N.C. 497, 504, 212 S.E.2d 106, 110 (1975), *cert. denied*, 428 U.S. 909, 49 L. Ed. 2d 1216 (1976). We conclude that there was sufficient evidence in the present case to warrant the trial court's instruction on the lesser-included offense of attempted first-degree rape.

In order to prove attempted first-degree rape, the State must demonstrate "that the defendant had the intent to commit the crime and committed an act which went beyond mere preparation, but fell short of actual commission of the first-degree rape." *State v. Montgomery*, 331 N.C. 559, 567, 417 S.E.2d 742, 746 (1992). As noted above, the evidence in the present case tended to show that in the early morning hours of 8 June 1991, the defendant entered Ms. Nettles' apartment, stabbed her and dragged her outside to a grassy common area where he continued to stab her. A neighbor who had been awakened by Ms. Nettles' screams looked out of her apartment window and saw the defendant straddling Ms. Nettles and "almost laying on top of her." When the police arrived at the scene, they discovered that a large rock had been thrown through the back window of Ms. Nettles' apartment. The officers followed a trail of blood that led from the grassy common area through the back door of Ms. Nettles' apartment and into her living room, where the officers found patches of blood on the sofa. The trail then led from the sofa to Ms. Nettles' upstairs bedroom, where the officers found another spattering of blood.

This evidence, when viewed in the light most favorable to the State, supports a reasonable inference that in the early morning hours of 8 June 1991, the defendant gained access to Ms. Nettles' home by throwing a large rock through her back window. Upon entry, he went upstairs to Ms. Nettles' bedroom, where he first attempted to rape her and an initial struggle ensued. The defendant then dragged Ms. Nettles out of her bedroom and down the stairs to the living room sofa, where they continued to struggle as he again attempted to rape her. The defendant subsequently dragged Ms. Nettles outside where he straddled her in a final attempt at rape. Thus, there is considerable evidence from which the jury could reasonably infer that the defendant intended to commit first-degree rape and committed an act which exceeded mere preparation.

The evidence also tended to show that Ms. Nettles' underwear was not torn, that there had been no transfer of pubic hairs between

the defendant and Ms. Nettles, that there was no injury to Ms. Nettles' vaginal area and that the SBI serologist who examined the semen found in and on Ms. Nettles' body could not conclusively determine the blood type of the semen. This evidence supports a reasonable inference that the defendant's actions, while exceeding mere preparation, fell short of the actual commission of first-degree rape.

We therefore conclude that the evidence in the present case, taken as a whole and in the light most favorable to the State, was sufficient to permit a rational trier of fact to find, as the jury found in this case, that the defendant intended to commit first-degree rape and committed an act which went beyond mere preparation, but fell short of the actual commission of first-degree rape. The trial court thus did not err by instructing the jury on the lesser-included offense of attempted first-degree rape. We therefore reject this assignment of error.

[3] By his third assignment of error, the defendant maintains that there was insufficient evidence to support submission of first-degree burglary to the jury. First-degree burglary is the breaking or entering of an occupied dwelling at night with the intent to commit a felony therein. *Id.* at 568, 417 S.E.2d at 747; *see also* N.C.G.S. § 14-51 (1993). The defendant's specific contention is that the evidence in the present case did not allow a reasonable inference that he intended to commit a felony when he broke into Ms. Nettles' apartment. We disagree.

Having concluded that there was sufficient evidence to support the jury's finding that the defendant attempted to rape Ms. Nettles, we also conclude that there was sufficient evidence from which a rational trier of fact could conclude that the defendant entered Ms. Nettles' apartment with the intent to commit rape. *See State v. Williams*, 330 N.C. 579, 585, 411 S.E.2d 814, 818 (1992) ("The criminal intent of the defendant at the time of breaking or entering may be inferred from the acts he committed subsequent to his breaking or entering the building."). Additionally, since the evidence tended to show that the defendant stabbed Ms. Nettles to death following his entry into her home, a rational trier of fact also could conclude that the defendant entered Ms. Nettles' apartment with the intent to commit murder. *Id.* Thus, the trial court did not err in denying the defendant's motions to dismiss the charge

of first-degree burglary. This assignment of error is therefore without merit.

[4] By his fourth assignment of error, the defendant insists that the evidence was insufficient to support submission of the charge of first-degree murder under the felony murder theory. Specifically, the defendant contends that since there was insufficient evidence to support the submission of the underlying felonies of burglary and attempted rape, the trial court erred in submitting first-degree murder under the felony murder rule. We have already determined that there was sufficient evidence in the case at bar of the underlying felonies of first-degree burglary and attempted first-degree rape. The evidence was therefore sufficient to support submission of first-degree murder under the felony murder rule. Accordingly, this assignment of error is without merit.

[5] The defendant contends by his fifth assignment of error that the indictment charging him with first-degree burglary was fatally defective in that it failed to specify the felony he intended to commit when he broke into Ms. Nettles' apartment. In support of his contention, the defendant notes that we have held in previous cases that an "indictment for burglary must specify the particular felony which the defendant is alleged to have intended to commit at the time of the breaking and entering, and it is not sufficient to charge generally an intent to commit an unspecified felony." *State v. Norwood*, 289 N.C. 424, 429, 222 S.E.2d 253, 257 (1976); *see also State v. Wells*, 290 N.C. 485, 493, 226 S.E.2d 325, 331 (1976); *State v. Cooper*, 288 N.C. 496, 499, 219 S.E.2d 45, 47 (1975); *State v. Tippett*, 270 N.C. 588, 593-94, 155 S.E.2d 269, 273 (1967); *State v. Allen*, 186 N.C. 302, 305, 119 S.E. 504, 505 (1923). Such cases were decided prior to the enactment of N.C.G.S. § 15A-924(a)(5), however, and are no longer controlling on this issue. That statute, which has supplanted prior law, provides that an indictment or other criminal pleading must contain:

> A plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation.

N.C.G.S. § 15A-924(a)(5) (1988 & Supp. 1993). We conclude that the first-degree burglary indictment in the present case satisfies the requirements of the statute.

In *State v. Freeman*, 314 N.C. 432, 333 S.E.2d 743 (1985), this Court held that an indictment for first-degree kidnapping satisfied the requirements of N.C.G.S. § 15A-924(a)(5) even though it did not specify the felony the defendant intended to commit at the time of the kidnapping. *Freeman*, 314 N.C. at 435, 333 S.E.2d at 745. We observed that an essential element of kidnapping "is that the confinement, restraint or removal be for the purpose of facilitating the commission of *any* felony or facilitating escape following the commission of *a* felony." *Id.* We then concluded that the requirements of N.C.G.S. § 15A-924(a)(5) were met "by the allegation in the indictment that the confinement, restraint or removal was carried out for the purpose of facilitating 'a felony' or escape following 'a felony.'" *Freeman*, 314 N.C. at 435, 333 S.E.2d at 745. We acknowledged "that in burglary cases we have required that the indictment specify the particular felony which the defendant intended to commit." *Id.* at 436, 333 S.E.2d at 746. We noted, however, that this rule was "drawn from the ancient strict pleading requirements of the common law" while the pleading requirements of the Criminal Procedure Act are "more liberal." *Id.* Nevertheless, we found it unnecessary to decide whether the common law rule regarding specificity in burglary indictments survived the enactment of the Criminal Procedure Act. *Id.*

We now conclude that the indictment for first-degree burglary in the present case satisfies the requirements of N.C.G.S. § 15A-924(a)(5), even though it does not specify the felony the defendant intended to commit when he entered Ms. Nettles' apartment. The true bill of indictment for first-degree burglary returned against the defendant in the present case included the following:

> The jurors for the State upon their oath present that on or about the date of offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously did during the nightime [sic] between the hours of four and five o'clock . . . break and enter the dwelling house of [Ms. Nettles] . . . . At the time of the breaking and entering the dwelling house was actually occupied by [Ms. Nettles], Marcus Nettles, Hamilton Nettles and Asiah Nettles.

The defendant broke and entered the dwelling house with the intent to commit a felony therein.

As in *Freeman*, "the indictment here charges the offense . . . in a plain, intelligible, and explicit manner and contains sufficient allegations to enable the trial court to proceed to judgment and to bar a subsequent prosecution for the same offense." *Freeman*, 314 N.C. at 436, 333 S.E.2d at 746. The indictment "also informs the defendant of the charge against him with sufficient certainty to enable him to prepare his defense." *Id.* If the defendant in the case at bar was in fact "in need of further factual information," he need only have moved for a bill of particulars pursuant to N.C.G.S. § 15A-925. *Freeman*, 314 N.C. at 436-37, 333 S.E.2d at 746.

The indictment for first-degree burglary in the present case therefore satisfies the requirements of N.C.G.S. § 15A-924(a)(5), notwithstanding the fact that it does not specify the felony the defendant intended to commit when he entered Ms. Nettles' apartment. To the extent our earlier cases cited above would have required a different result, we expressly overrule them. We reject this assignment of error.

[6] By his sixth and final assignment of error, the defendant argues that the trial court erred in denying his motions to suppress physical evidence seized from his home and statements he made to the police following his arrest. The defendant insists that this evidence was obtained pursuant to an unconstitutional warrantless arrest of the defendant in his home in the absence of exigent circumstances and therefore was inadmissible. *See Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441 (1963). We disagree.

In the absence of exigent circumstances, a warrantless, nonconsensual entry into a suspect's home to effect a routine felony arrest violates the Fourth Amendment to the Constitution of the United States. *Payton v. New York*, 445 U.S. 573, 576, 63 L. Ed. 2d 639, 644 (1980). In the present case, the officers arrived at the scene of the murder to find Ms. Nettles' body lying in a grassy common area of the apartment complex. She had been the victim of a brutal stabbing. An eyewitness to the murder identified the defendant as the killer. Another witness informed the officers that he had seen the defendant running toward the defendant's apartment shortly after the murder. The officers went to the defendant's nearby apartment and discovered fresh blood on the doorknob of the back door. The officers had no way of knowing at this point

STATE v. WORSLEY

[336 N.C. 268 (1994)]

whether the defendant was alone or might be harming someone else inside his apartment. The officers knocked loudly on the defendant's door and announced themselves as police officers, but received no response. We conclude that these uncontroverted facts constituted exigent circumstances sufficient to justify the officers' warrantless, nonconsensual entry into the defendant's home to effect his arrest. *See State v. Allison*, 298 N.C. 135, 141, 257 S.E.2d 417, 421 (1979) (enumerating seven factors informative on the existence of exigent circumstances, including: the gravity and nature of the offense, "the reasonableness of the belief the suspect is armed," "the degree of probable cause to believe the suspect committed the crime involved" and "whether reason to believe the suspect is in the premises entered existed"); *see also State v. Johnson*, 310 N.C. 581, 586, 313 S.E.2d 580, 583 (1984) (recognizing that the "[f]acts and circumstances sufficient to constitute 'exigent circumstances' in the context of [F]ourth [A]mendment searches vary widely"); *State v. Yananokwiak*, 65 N.C. App. 513, 517, 309 S.E.2d 560, 563 (1983) (employing a "totality of the circumstances" test for determining whether there were exigent circumstances sufficient to justify a warrantless entry to arrest).

[7] Once lawfully inside, the officers found the defendant lying in bed and noticed blood on the bedsheet. The bloody bedsheet therefore was admissible since it was within the plain view of the officers while they were lawfully on the premises. *See Allison*, 298 N.C. at 140, 257 S.E.2d at 420 ("The seizure of suspicious items in plain view inside a dwelling is lawful if the officer possesses legal authority to be on the premises."); *see also Horton v. California*, 496 U.S. 128, 110 L. Ed. 2d 112 (1990); *Arizona v. Hicks*, 480 U.S. 321, 94 L. Ed. 2d 347 (1987); *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L. Ed. 2d 564, *reh'g denied*, 404 U.S. 874, 30 L. Ed. 2d 120 (1971).

[8] The officers took the defendant into custody and the defendant's wife consented to a search of their apartment. The remaining items of evidence about which the defendant complains were seized in the course of this consent search. As the defendant does not challenge the voluntariness of his wife's consent, the evidence obtained pursuant to this search was admissible. *See* N.C.G.S. §§ 15A-221, -222 (1988); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L. Ed. 2d 854 (1973).

STATE v. WORSLEY

[336 N.C. 268 (1994)]

We recognize that in the past we have held that a wife has no authority to consent to a search of the home she shares with her husband. *See State v. Hall*, 264 N.C. 559, 142 S.E.2d 177 (1965) (wife did not have the authority to consent to a search of the home and therefore stolen property recovered during the search was inadmissible against the husband at trial); *see also State v. Woods*, 286 N.C. 612, 213 S.E.2d 214 (1975), *judgment vacated in part*, 428 U.S. 903, 49 L. Ed. 2d 1208 (1976) (recognizing the continuing validity of *State v. Hall*); *State v. Reams*, 277 N.C. 391, 178 S.E.2d 65 (1970), *cert. denied*, 404 U.S. 840, 30 L. Ed. 2d 74 (1971) (recognizing the continuing validity of *Hall*). These cases have been effectively overruled on this point, however, by the enactment of N.C.G.S. §§ 15A-221, -222. N.C.G.S. § 15A-221 provides that law enforcement officers "may conduct a search and make seizures, without a search warrant or other authorization, if consent to the search is given." N.C.G.S. § 15A-222 provides that the consent needed to justify a warrantless search and seizure may be given "[b]y a person who by ownership or otherwise is reasonably apparently entitled to give or withhold consent to a search of [the] premises." The statute places no express restriction on the authority of a wife to consent to a search of the premises she shares with her husband. Nor can such a restriction fairly be read into the broad language of N.C.G.S. § 15A-222, since a wife clearly is "a person who by ownership or otherwise is reasonably apparently entitled to give or withhold consent to a search of [the] premises" she shares with her husband.

Prior cases also likely were premised on the view, still prevailing in some quarters in those days, that the husband was the master of his wife. *See, e.g., Hall*, 264 N.C. at 563, 142 S.E.2d at 179 (a wife has no authority "to consent to a search of a *husband's* dwelling") (emphasis added). Today, any such notion is repugnant and untenable as well as being out of touch with reality. Thus, the better view, and the one we now expressly adopt, is that a wife may consent to a search of the premises she shares with her husband. To the extent that *Hall* and its progeny are in conflict with this principle, they are expressly overruled.

[9]   We also reject the defendant's argument that his statements to the police at the Chatham County Jail following his arrest were inadmissible. The Supreme Court of the United States recently held that a voluntary confession given by a murder suspect who had been fully advised of his rights at the police station following

his arrest was admissible even though the officers had arrested the defendant in his home without a warrant in violation of *Payton. New York v. Harris*, 495 U.S. 14, 21, 109 L. Ed. 2d 13, 22 (1990). Thus, even assuming, *arguendo*, that the officers violated *Payton* in the case at bar, the trial court properly admitted the defendant's informed and voluntary confession.

The trial court did not err in admitting the physical evidence seized from the defendant's apartment and his subsequent confession to the police. Accordingly, we reject this assignment of error.

For the foregoing reasons, we hold that the defendant received a fair trial free of prejudicial error.

No error.